401 S.E.2d 216

**Sonja L. DALTON**

v.

**Emily A. SPIELER, Workers' Compensation Commissioner, and the Nicholas County Commission.**

No. 19685.

Supreme Court of Appeals of West Virginia.

Dec. 12, 1990.

Linda Nelson Garrett, Garrett & Vaughan, Summersville, for Sonja L. Dalton.

Roger W. Tompkins, Atty. Gen., Mike Lawrence, Asst. Atty. Gen., Charleston, for Emily A. Spieler.

Gregory Tucker, Pros. Atty., Summersville, for County Com'n.

McHUGH, Justice:

This original proceeding is before the Court upon the petition of Sonja L. Dalton.

The respondent is Emily A. Spieler, Workers' Compensation Commissioner.[1]

The petitioner, employed by the Nicholas County Commission, injured her back in the course of and as a result of her employment on February 5, 1985. As a result of this injury, temporary total disability (TTD) benefits were awarded and paid to the petitioner from February 8, 1985 to July 14, 1986.[2] On July 15, 1986, the petitioner was awarded three percent permanent partial disability (PPD) benefits.[3]

On February 17, 1989, the petitioner's claim was reopened, and additional TTD benefits were paid to the petitioner. However, on March 9, 1989, the petitioner was notified by the respondent that the TTD claim would be closed on April 8, 1989 if an updated attending physician's report was not received by the respondent.

It is apparent from the record that no updated attending physician's report was submitted to the respondent by the petitioner by April 8, 1989. Notwithstanding this fact, the respondent, on May 9, 1989, arranged for the petitioner to be examined by Dr. Andrew E. Landis.

On June 29, 1989, the petitioner was examined by Dr. Jack Pushkin, who, on July 10, 1989, recommended in an attending physician's report that the petitioner be awarded twelve percent PPD benefits, based upon his examination.[4] However, between the time of Dr. Pushkin's examination and the reception of Dr. Pushkin's attending physician's report by the respondent, spe-cifically, on July 5, 1989, the petitioner was notified that her TTD claim was closed due to the petitioner's failure to supply medical evidence showing that she is entitled to further benefits.[5]

On August 15, 1989, the petitioner was examined by Dr. Landis, who recommended that the petitioner be awarded ten percent PPD benefits.

On September 12, 1989, the respondent awarded the petitioner seven percent PPD benefits which is based upon the ten percent recommendation by Dr. Landis, less the three percent award of July 15, 1986.

The petitioner contends that pursuant to *W.Va.Code*, 23–4–7a(c), as amended, which we discuss herein, the respondent has a duty to enter an award of twelve percent PPD benefits based upon the report of Dr. Pushkin.[6]

The respondent, on the other hand, maintains that the "sole issue" in this proceeding is whether the respondent acted arbitrarily or was under a misapprehension of existing law by awarding the petitioner seven percent PPD benefits as opposed to twelve percent as recommended by Dr. Pushkin.

In this proceeding, the petitioner seeks a writ of mandamus compelling the respondent to enter an award of twelve percent PPD benefits. After reviewing the parties' arguments and all matters of record, we are of the opinion that a writ of mandamus should be granted.

---

1. Emily Spieler no longer serves as Workers' Compensation Commissioner. When this case was submitted to this Court, the Commissioner was Andrew N. Richardson.

    Also named as a respondent is the Nicholas County Commission. Inasmuch as this party has made no appearance nor submitted a brief in response in this case, our reference to the "respondent" will be only to the Workers' Compensation Commissioner.

2. *See W.Va.Code*, 23–4–6(b), as amended.

3. *See W.Va.Code*, 23–4–6(d)–(f), as amended.

4. The respondent received Dr. Pushkin's attending physician's report on July 12, 1989.

5. On July 17, 1989, the petitioner was notified that the attending physician's report of Dr. Pushkin, dated July 10, 1989, could not be uti-lized as a basis for paying TTD benefits because the claim had been closed.

6. As will be discussed in this opinion, *W.Va. Code*, 23–4–7a, originally enacted in 1979, was amended in 1986, and again in 1990. It is the 1986 version which was in effect during the pertinent events in this case. The 1986 and 1990 (current) versions are, for the most part, identical. The only significant change in the 1990 version is the addition of a provision relating to requiring examinations performed by physicians in accordance with procedures set forth by the health care advisory panel. *See W.Va.Code*, 23–4–7a(h) [1990] and *W.Va.Code*, 23–4–3b [1990]. The only other changes in *W.Va.Code*, 23–4–7a reflect the use of gender-neutral terms.

*W. Va. Code*, 23–4–7a [1990] provides a system by which the commissioner can "monitor" claims for TTD benefits. This statute, which was originally enacted in 1979, is the result of a legislative finding "that overpayments of temporary total disability benefits with the resultant hardship created by the requirement of repayment should be minimized[.]" *W. Va. Code*, 23–4–7a(a), as amended. In order to consider the respective arguments of the parties in this case, an analysis of *W. Va. Code*, 23–4–7a [1990], and its purpose in this state's workers' compensation act, is necessary.

Under subsection (b) of *W. Va. Code*, 23–4–7a [1990], if the commissioner concludes that a "claimant might benefit by an independent medical evaluation," then, pursuant to subsection (d), "the commissioner *shall* refer the claimant to a physician or physicians of the commissioner's selection for examination and evaluation." (emphasis supplied) If the physician selected by the commissioner recommends continued, additional, or different treatment for the claimant, then the claimant and the claimant's then-treating physician must be notified of such recommendation and this "recommended treatment *may* be authorized by the commissioner." (emphasis supplied)

Furthermore, pursuant to subsection (e), the commissioner must enter notice of suspension of payments of TTD benefits when: (1) the commissioner's selected physician has concluded that the "maximum degree of improvement" has been reached by the claimant, *W. Va. Code*, 23–4–7a(e)(1) [1990]; *or* (2) the claimant's authorized treating physician, pursuant to subsection (c) which we discuss *infra*, advises the commissioner that either (a) the claimant's "maximum degree of improvement" has been reached or, (b) the claimant "is ready for disability evaluation," *and* when the claimant's authorized treating physician has made no PPD award recommendation, *W. Va. Code*,

23–4–7a(e)(2) [1990]; *or* (3) other evidence "justifies a finding" that the claimant's "maximum degree of improvement" has been reached, *W. Va. Code*, 23–4–7a(e)(3) [1990].[7]

However, if, under subsection (b), the commissioner concludes that a claimant *"would not* benefit by an independent medical evaluation, the commissioner shall mark the claim file accordingly and shall diary such claim file as to the next date for required review which shall not exceed sixty days." (emphasis supplied) When this is the case, as it is in the case now before us, subsection (c) becomes a key provision.

*W. Va. Code*, 23–4–7a(c)(1) [1990] provides:

(c) When the authorized treating physician concludes that the claimant has either reached his or her maximum degree of improvement or is ready for disability evaluation, or when the claimant has returned to work, such authorized treating physician may recommend a permanent partial disability award for residual impairment relating to and resulting from the compensable injury, and the following provisions shall govern and control:

(1) If the authorized treating physician recommends a permanent partial disability award of *fifteen percent or less*, the commissioner *shall* enter an award of permanent partial disability benefits based upon such recommendation and all other available information, and the claimant's entitlement to temporary total disability benefits shall cease upon the entry of such award unless previously terminated under the provisions of subsection (e) of this section.

(emphasis supplied)

The petitioner contends that under this statutory provision, particularly, in light of the word "shall," the respondent has a mandatory duty to enter an award of

---

7. *W. Va. Code,* 23–4–7a(e)(3) [1990] goes on to state that "in all cases a finding by the commissioner that the claimant has reached his or her maximum degree of improvement shall terminate the claimant's entitlement to temporary total disability benefits regardless of whether the claimant has been released to return to

work," but "under no circumstances shall a claimant be entitled to receive temporary total disability benefits either beyond the date the claimant is released to return to work or beyond the date he or she actually returns to work."

twelve percent PPD benefits inasmuch as this recommendation is "fifteen percent or less."

The respondent, however, maintains that *W.Va.Code*, 23–4–7a [1990], does not support the petitioner's claim, but, rather, the only issue before this Court is whether the respondent acted arbitrarily or under a misapprehension of existing law. Specifically, the respondent points to subsection (g) of *W.Va.Code*, 23–4–7a [1990], which provides, in very general terms:

> (g) The provisions of this section are in addition to and in no way in derogation of the power and authority vested in the commissioner by other provisions of this chapter or vested in the employer to have a claimant examined by a physician or physicians of the employer's selection and at the employer's expense, or vested in the claimant or employer to file a protest, under other provisions of this chapter.

As "authority vested in the commissioner by other provisions of this chapter," the respondent then turns to *W.Va.Code*, 23–4–8 [1990], which provides, in relevant part: "The commissioner shall have authority, after due notice to the employer and claimant, *whenever* in the commissioner's opinion it shall be necessary, to order a claimant of compensation for a personal injury other than occupational pneumoconiosis to appear for examination before a medical examiner or examiners[.]" (emphasis supplied) [8]

The basis of the respondent's argument is that the commissioner acted within her statutorily granted discretion by exercising authority pursuant to *W.Va.Code*, 23–4–8 [1990] by ordering a medical examination of the petitioner on May 9, 1989, *before* the petitioner submitted Dr. Pushkin's attending physician's report on July 10, 1989.

Moreover, the respondent asserts that even under *W.Va.Code*, 23–4–7a(c)(1) [1990], the commissioner is granted some discretion by that subsection's language, specifically, that "the commissioner shall

enter an award of permanent partial disability benefits based upon such recommendation *and all other available information* [.]" (emphasis supplied) We do not agree with the respondent's contention.

It is apparent from a plain reading of the specific *and* general provisions of *W.Va.Code*, 23–4–7a [1990], that the statute contains legislative compromises which attempt to balance the interests of an injured claimant against those of the workers' compensation commission, the workers' compensation fund, and the employer.

Particularly, the specific provisions are contained in subsection (c), which provisions establish, as a clear benchmark, a fifteen percent threshold with respect to a PPD award recommended by the authorized treating physician.

The original version of *W.Va.Code*, 23–4–7a did not provide for an examination of the claimant by the authorized treating physician for a determination of whether the claimant has reached a maximum degree of improvement, nor did it make a provision whereby "the commissioner *shall* enter an award of permanent partial disability benefits based upon" the recommendation of the authorized treating physician when such recommendation is for PPD benefits of fifteen percent or less. (emphasis supplied) These changes were the result of the 1986 amendment to *W.Va.Code*, 23–4–7a.

A review of the brief history of *W.Va.Code*, 23–4–7a indicates an obvious legislative intent to focus on the termination of TTD benefits *as such termination relates to the recommendation of the authorized treating physician*. Furthermore, it is clear that it is the legislature's intent to establish a clear benchmark for determining whether the commissioner has a mandatory duty to enter an award of PPD benefits or must select a doctor for an independent medical evaluation in the event the authorized treating physician's recommendation is greater than fifteen percent.

---

**8.** *W.Va.Code*, 23–4–8 was amended in 1990. The 1975 version of this statute was in effect during the pertinent events in this case. The

1990 changes reflect the use of gender-neutral terms.

This intent is evidenced by the separate paragraph to subsection (c) of *W. Va. Code*, 23–4–7a [1990], namely, paragraph (2), which provides, in part:

(2) If, however, the authorized treating physician recommends a permanent partial disability award in excess of fifteen percent, or recommends a permanent total disability award, the claimant's entitlement to temporary total disability benefits shall cease upon the receipt by the commissioner of such report and the commissioner shall refer the claimant to a physician or physicians of the commissioner's selection for independent evaluation prior to the entry of a permanent disability award[.]

The general provisions, on the other hand, are contained in subsection (g), as well as the phrase "and all other available information," which is contained in subsection (c). These provisions, particularly those in subsection (g), merely state that the enactment of *W. Va. Code*, 23–4–7a does not remove the commissioner's power and authority in other respects.

■ In an appropriate case, where events have transpired under the *specific* provisions of a statute, we must follow the rule that "[a] specific section of a statute controls over a general section of the statute." Syl. pt. 2, *State ex rel. Myers v. Wood*, 154 W.Va. 431, 175 S.E.2d 637 (1970); *accord*, syl. pt. 2, *In re Vandelinde*, 179 W.Va. 183, 366 S.E.2d 631 (1988).[9]

■ Moreover, where the parties contend that support for their respective positions can be found within various provisions of the workers' compensation act, we are guided by the following principle: "Workmen's compensation statutes, being remedial, should be liberally construed in favor of claimants for workmen's compensation benefits." Syl. pt. 1, *Johnson v. State Workmen's Compensation Commissioner*, 155 W.Va. 624, 186 S.E.2d 771

(1972). *See also Dunlap v. State Workmen's Compensation Commissioner*, 160 W.Va. 58, 62, 232 S.E.2d 343, 345 (1977); *accord*, syl. pt. 1, *Hughes v. State Workmen's Compensation Commissioner*, 156 W.Va. 146, 191 S.E.2d 606 (1972).

■ *W. Va. Code*, 23–4–7a [1990] places upon the workers' compensation commissioner a duty, namely, to monitor the claim of an injured claimant at an *early* point during the progression of such claim. This statute was enacted to minimize the interval between the termination of TTD benefits and the granting of PPD benefits. Indeed, with respect to *W. Va. Code*, 23–4–7a, we have recognized that "[i]n an appropriate case where it is demonstrated to the Court that there has been an unjustifiable hiatus between the termination of temporary total disability benefits and the granting of a permanent partial disability award, we would award a mandamus." *UMWA by Roberts v. Lewis*, 172 W.Va. 560, 565, 309 S.E.2d 58, 63 (1983).

Notwithstanding the respondent's reliance upon general provisions of the workers' compensation act, it is imperative to address this case with a view toward the *entire* circumstances.

When the respondent initially denied the petitioner a twelve percent award of PPD benefits, the respondent, by letter, set forth two reasons for doing so: (1) the TTD claim had previously been closed by the petitioner's failure to file the attending physician's report, and, therefore, *W. Va. Code*, 23–4–7a(c) [1990] does not even apply; and (2) even if *W. Va. Code*, 23–4–7a(c) [1990] did apply, the ultimate determination of disability award is to be made by the commissioner because that statute only provides for a *recommendation* by the authorized treating physician.

In her letter to the petitioner, the respondent cited *Stewart v. State Workmen's Compensation Commissioner*, 155 W.Va. 633, 186 S.E.2d 700 (1972), wherein this

---

**9.** In this case, we deal with specific and general *sub*sections that are contained within one section, namely, *W. Va. Code*, 23–4–7a [1990]. However, this rule would apply with as much force with respect to this statutory enactment. *Cf.*

*Courtney v. State Department of Health*, 182 W.Va. 465, 470 n. 6, 388 S.E.2d 491, 496 n. 6 (1989) (rule concerning statutes *in pari materia* applies with at least as much force to subsections as it would to more than one section).

Court restated the principle that "[a]n examining or treating physician has no power or authority to fix or determine the degree of disability in any compensation case. That is to be determined by the commissioner, ... and by him [or her] alone in the first instance." *Id.*, 155 W.Va. at 637, 186 S.E.2d at 703.

Our holding in *Stewart*, however, is not inconsistent with the commands of *W.Va. Code*, 23–4–7a [1990]. It generally remains the commissioner's duty to determine the amount of an award. *W.Va.Code*, 23–4–7a [1990], however, sets forth specific language mandating that the commissioner must base an award on the recommendation of the authorized treating physician in certain circumstances.

The authorized treating physician in this case, Dr. Pushkin, performed an examination of the petitioner *before* the respondent closed the petitioner's TTD claim.[10] Dr. Pushkin's examination resulted in a recommendation by him of an award of twelve percent PPD benefits. Clearly, this followed the procedure set forth by *W.Va. Code*, 23–4–7a(c), as amended. Because Dr. Pushkin's recommendation was a PPD award of "fifteen percent or less," then paragraph (1) of *W.Va.Code*, 23–4–7a(c), as amended, applies, and the commissioner has a mandatory duty to enter the recommended award.[11]

Pursuant to *W.Va.Code*, 23–4–7a(c)(1), as amended, when an authorized treating physician recommends a permanent partial disability award of fifteen percent or less, and such recommendation is based upon an examination performed prior to the closing of a claimant's temporary total disability benefits, then the workers' compensation commissioner has a mandatory duty to enter an award of permanent partial disability benefits based upon the recommendation of the authorized treating physician.

Finally, mandamus is a proper remedy in this case. "Mandamus will lie to compel the workers' compensation commissioner to perform nondiscretionary duties." Syl. pt. 4, *Meadows v. Lewis*, 172 W.Va. 457, 307 S.E.2d 625 (1983).

Consistent with the foregoing, a writ of mandamus is granted, thus compelling the respondent to enter an award of twelve percent PPD benefits in favor of the petitioner.

Writ granted.

---

**10.** Key to our decision in this case is the fact that the petitioner and the authorized treating physician acted pursuant to the provisions of *W.Va.Code*, 23–4–7a(c), as amended, *prior to* the closing of the petitioner's TTD claim. Had this not occurred, that is, had *no* activity taken place with respect to the petitioner's claim, then the respondent's contention in this case might have more merit.

**11.** We reject the respondent's assertion that "all other available information," as that phrase is used in *W.Va.Code*, 23–4–7a [1990], refers to a physical examination of the claimant ordered pursuant to *W.Va.Code*, 23–4–8 [1990] in this case.

Based upon the legislature's intent by its amendment to *W.Va.Code*, 23–4–7a, that is, to establish a clear benchmark for determining a disability award, *see supra*, it is illogical to conclude that the commissioner can utilize another

statutory power, such as the authority to order a physical examination, to *circumvent* the legislative intent of *W.Va.Code*, 23–4–7a(c) [1990]. This is evident because there is no reference to the provisions of *W.Va.Code*, 23–4–7a [1990] contained in *W.Va.Code*, 23–4–8 [1990]. Moreover, a plain reading of subsection (g) of *W.Va. Code*, 23–4–7a [1990] indicates that the other provisions of *W.Va.Code*, 23–4–7a [1990] do nothing to derogate the *employer's* right to have the claimant examined by a physician of the *employer's selection*. It is not clear that the legislature, by this subsection, was referring to the *commissioner's* power to order a physical examination pursuant to *W.Va.Code*, 23–4–8 [1990].

In any event, under the facts presented in this case, the authorized treating physician made a recommendation pursuant to the procedure set forth in *W.Va.Code*, 23–4–7a(c) [1990]. This is apparently a case envisioned by the legislature's 1986 amendment to *W.Va.Code*, 23–4–7a.