517 S.E.2d 295

**Harold SUMMERS, Jr., Plaintiff Below, Appellant,**

v.

**Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County, the Board of Review of the West Virginia Department of Employment Security and the City of Charleston, Defendants Below, Appellees.**

No. 25793.

Supreme Court of Appeals of West Virginia.

Submitted April 14, 1999.

Decided June 18, 1999.

---

Mary McQuain, Esquire, Calwell & McCormick, Charleston, West Virginia, Attorney for Appellant.

Mary B. McLaughlin, Esquire, Charleston, West Virginia, Attorney for Appellee, Bureau of Employment Security.

Belinda B. Jackson, Esquire, Shuman, Annand, Bailey, Wyant & Earles, Charleston, West Virginia, Attorney for Appellee, City of Charleston.

PER CURIAM:

The appellant, Harold Summers, Jr., worked for the City of Charleston (the "City") as a building inspector. The City terminated the appellant after he was accused of stealing an object from a condemned house. Appellant sought unemployment compensation benefits, which were awarded by an administrative law judge of the Board of Review of the West Virginia Department of Employment Security (the "Board"). The City appealed this decision to the Circuit Court of Kanawha County, which overturned the Board's administrative law judge and found the appellant to be disqualified from the receipt of unemployment compensation benefits. Appellant Summers now appeals this decision, claiming that the circuit court erred by reversing the decision of the administrative law judge, and by improperly substituting its judgment for that of the administrative law judge. We agree with appellant, and for the reasons set forth below, reverse.

## I.

### Factual Background

Appellant Harold Summers, Jr., worked as a building inspector for the City of Charleston from April of 1993 until December of 1996. As part of his job, Mr. Summers would travel to buildings identified by his employer to inspect them for code violations. Often, Mr. Summers' duties would require him to enter the buildings he was inspecting.

On one occasion in November of 1996, Mr. Summers and a co-worker were inside a condemned home that had been vacated over a year before in August of 1995, and had been scheduled for demolition. Despite the lengthy absence of the occupants, various items of personal property remained in the home. It was alleged by the City that during this visit, Mr. Summers picked up a commemorative "coin" or "medallion" and took it with him when he left the property.[1]

On December 5, 1996, the City terminated Mr. Summers from his employment. The City provided several reasons for Mr. Summers' termination, including his alleged theft of the coin from the condemned home.[2]

As a result of his termination, Mr. Summers filed a claim for unemployment compensation with the West Virginia Department of Employment Security, a department of the Unemployment Compensation Division, which is itself a division of the West Virginia Bureau of Employment Programs. The first person to rule upon such a claim, a "Deputy" in the Department of Employment Security, denied Mr. Summers' claim on January 23, 1997.

Mr. Summers appealed this decision to the Board of Review (the "Board"), which is the next step in the appeals process for one unsatisfied with the Deputy's decision. An administrative law judge (the "ALJ") for the Board conducted, de novo, a hearing, during which Mr. Summers and representatives for the City presented evidence, including live testimony, relating to Mr. Summers' termination.

The ALJ noted in his factual findings that the City admitted that the alleged theft of the coin was the primary reason for Mr. Summers' termination, and that the City had failed to introduce any evidence to show who owned the subject coin and whether it had any value other than a nominal value. As a result, the ALJ ruled on March 20, 1997, that the City had failed to meet its burden of proof to show misconduct, and therefore Mr. Summers was entitled to unemployment compensation.

The City appealed to the Board of Review, as a whole, which upheld the decision of the ALJ in a decision on May 21, 1997. The City then appealed the matter to the Circuit

1. It appears that this "coin" was a so-called "Arch Moore medallion," produced, in quantity, in connection with the political activities of the former governor. The record indicates that coin dealers projected a value of no more than a dollar for this item. We shall refer to it simply as a coin.

2. The City claimed that Mr. Summers committed other acts that contributed to his discharge. The factual findings of the administrative law judge indicate that it was the alleged theft of the coin that resulted in his discharge. Because we do not feel these findings are "plainly wrong," we shall address only the alleged theft of the coin in this opinion.

Court of Kanawha County. After reviewing the appeal on briefs, the circuit court reversed the decision of the ALJ and the Board of Review. The circuit court found that Mr. Summers had been discharged for an act of gross misconduct and was therefore disqualified from receiving unemployment compensation benefits.

Mr. Summers appeals that decision on the basis that the Circuit Court of Kanawha County erred by reversing the ALJ, and that the circuit court improperly substituted its judgment for that of the ALJ. We agree with appellant, and for reasons set forth below, reverse.[3]

## II.

### Standard of Review

■ We may not discard lightly the factual determinations made by an ALJ and affirmed by the Board of Review; however, we examine, *de novo,* conclusions of law:

> Findings of fact by the Board of Review of the West Virginia Department of Employment Security, in an unemployment compensation case, should not be set aside unless such findings are plainly wrong; however, the plainly wrong doctrine does not apply to conclusions of law by the Board of Review.

Syl. pt. 1, *Kisamore v. Rutledge,* 166 W.Va. 675, 276 S.E.2d 821 (1981). *Accord, Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994).

Among other factual findings, the ALJ found, and the Board affirmed, that Mr. Summers' alleged theft of the coin was the primary reason for his discharge, that Mr. Summers denied taking the coin, and that the City failed to introduce any evidence as to who might own the subject coin, or what value it might have. Such findings of fact, if

not plainly wrong, must stand. *Kisamore, Id.*

However, accepting the findings as true, we still must examine the legal conclusions of the ALJ. Specifically, the ALJ concluded that the City's failure to address the ownership or value of the coin, combined with Mr. Summers' denial that he took it, caused the City's claim of misconduct to fail.

Had the ALJ simply stated, as a factual finding, that Mr. Summers never took the coin, this matter probably would not have reached this Court. However, because the ALJ connected Mr. Summers' denial with the lack of evidence relating to ownership or value, the ALJ was making a legal conclusion that such evidence would be necessary before one could find that Mr. Summers had committed a theft, *even if he had admitted to taking the coin.* We must examine, *de novo,* this conclusion. *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994).

## III.

### Discussion

■ We note from the outset that precedent demands a liberal construction of any of our statutes relating to a worker's claim for unemployment compensation: "Unemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syl. pt. 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954); *see, Mercer County Bd. of Educ. v. Gatson,* 186 W.Va. 251, 412 S.E.2d 249 (1991); *London v. Board of Review of Dept. of Employment,* 161 W.Va. 575, 244 S.E.2d 331 (1978).[4]

■ An obvious corollary to this principal is that those aspects of the statute that might be used to deny a worker his or her unem-

---

**3.** We note with disfavor that this litigation, concerning merely the receipt of unemployment compensation benefits, and stemming from the alleged theft of an item valued at less than one dollar, has now continued for nearly as long as the appellant was employed, and has no doubt expended an enormous amount of taxpayer resources, not least among them the attention of this Court.

**4.** This maxim holds true for other claims filed by workers, including workers' compensation claims (Syl. pt. 2, *Dalton v. Spieler,* 184 W.Va. 471, 401 S.E.2d 216 (1990); Syl. pt. 1, *Johnson v. State Workmen's Compensation Commissioner,* 155 W.Va. 624, 186 S.E.2d 771 (1972)), and claims filed under the Wage Payment and Collection Act (*Jones v. Tri–County Growers Inc.,* 179 W.Va. 218, 366 S.E.2d 726 (1988); *Mullins v. Venable,* 171 W.Va. 92, 297 S.E.2d 866 (1982)).

ployment compensation require a more restrictive interpretation. "Disqualifying provisions of the Unemployment Compensation Law are to be narrowly construed." Syl. pt. 1, *Peery v. Rutledge*, 177 W.Va. 548, 355 S.E.2d 41 (1987).

■ Furthermore, it is incumbent upon the employer, when seeking a denial of benefits, to prove that the unemployed person should be disqualified from receiving unemployment compensation. "[T]he burden of persuasion is upon the former employer to demonstrate by the preponderance of the evidence that the claimant's conduct falls within a disqualifying provision of the unemployment compensation statute." *Peery v. Rutledge*, 177 W.Va. 548, 552, 355 S.E.2d 41, 45 (1987) (citing, *Bennett v. Hix*, 139 W.Va. 75, 84–85, 79 S.E.2d 114, 119 (1953); *Industrial Laundry v. Review Board*, 147 Ind.App. 40, 44, 258 N.E.2d 160, 163 (1970); *Gatlin v. Brown*, 154 So.2d 224, 226 (La.Ct.App.1963) (footnote omitted)).

■ The statutory language at issue in the case before us is byzantine in its complexity[5], but from the morass of dependent clauses one may distill the following: If one is discharged for misconduct, in general, one loses one's rights to unemployment compensation for six weeks, unless one is discharged (among other things) for theft or larceny in connection with one's work, in which case one is disqualified from receiving any unemployment compensation benefits until one has found a new job and worked for thirty days in covered employment. W. Va.Code § 21A–6–3 (1990).

■ In order for claimant in the position of the appellant to be disqualified from receiving unemployment compensation, his or her employer must provide evidence to the fact finder and demonstrate by a preponderance of that evidence that the claimant did indeed commit an act of theft or larceny in connection with his or her employment. *Peery v. Rutledge*, 177 W.Va. 548, 355 S.E.2d 41 (1987).

■ We also note that, "[t]he term 'misconduct' should be construed in a manner most favorable to not working a forfeiture. The penal character of the provision should be minimized by excluding cases not clearly intended to be within the exception denying unemployment compensation benefits." *Peery v. Rutledge*, 177 W.Va. 548, 551, 355 S.E.2d 41, 44 (1987) (citations omitted). *Accord, Foster v. Gatson*, 181 W.Va. 181, 381 S.E.2d 380 (1989) (*per curiam*).

■ The case before us demands that we briefly examine our criminal law as it relates to the charge of larceny. "To support a conviction for larceny at common law, it must be shown that the defendant took and carried

5. *Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:*

  *    *    *    *    *    *

  (2) *For the week in which he was discharged from his most recent work for misconduct and the six weeks immediately following such week;* or for the week in which he was discharged from his last thirty-day employing unit for misconduct and the six weeks immediately following such week. Such disqualification shall carry a reduction in the maximum benefit amount equal to six times the individual's weekly benefit. However, if the claimant returns to work in covered employment for thirty days during his benefit year, whether or not such days are consecutive, the maximum benefit amount shall be increased by the amount of the decrease imposed under the disqualification; *except that:*

  *If he were discharged from his most recent work for one of the following reasons,* or if he were discharged from his last thirty days employing unit for one of the following reasons:

Misconduct consisting of willful destruction of his employer's property; assault upon the person of his employer or any employee of his employer, if such assault is committed at such individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance, or being under the influence of any controlled substance while at work; arson, *theft, larceny, fraud or embezzlement in connection with his work;* or any other gross misconduct; *he shall be and remain disqualified for benefits until he has thereafter worked for at least thirty days in covered employment:* Provided, That for the purpose of this subdivision the words "any other gross misconduct" shall include, but not be limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from such act or acts.

West Virginia Code § 21A–6–3 (1990). (*Emphasis added.*)

away the personal property of another against his will and with the intent to permanently deprive him of the ownership thereof." Syl. pt. 3, *State v. Louk,* W. Va., 169 W.Va. 24, 285 S.E.2d 432 (1981).

Breaking out these requirements, we see that the property in question must belong to "another," and that the purported thief must take that property "against the will" of the owner and "with the intent to permanently deprive" the owner of ownership of the item. Because we agree with the ALJ that, as a matter of law, one cannot be guilty of larceny for taking away property abandoned by another, we reverse the Circuit Court of Kanawha County on this issue.

We by no means wish to encourage any individual charged with theft to make the claim that the property in question was abandoned. Clearly, we do not intend to craft a ruling that would render the junk in one's basement "abandoned" simply because it may rest undisturbed for many years. The facts surrounding any claim of the abandonment of property must be examined closely to prevent injustice. "To justify the finder in appropriating money or other property to his own use, the circumstances must be such as to afford reasonable ground for the belief that it has been voluntarily abandoned . . . ." *Kuykendall v. Fisher,* 61 W.Va. 87, 98, 56 S.E. 48, 53 (1906).

The ALJ below performed such an examination. The ALJ considered that the home was officially condemned, the owner of the home in which the coin was found had vacated the property some thirteen months before Mr. Summers allegedly took the coin, and the home had been left unsecured for some period of time.

We need not reach the issue of the coin's value, nor Mr. Summers' attestation that he did not take it, in order for us to decide this matter. The ALJ was correct in concluding that Mr. Summers, even if he had admitted to taking the coin, could not have committed a theft if the coin had been abandoned. The factual findings of the ALJ, as affirmed by the Board of Review are not plainly wrong. We hold that the Circuit Court of Kanawha County erred by reversing the ALJ and by improperly substituting its judgment for that of the ALJ. Accordingly, we reverse, and rule that Mr. Summers is not disqualified from the receipt of unemployment compensation benefits.

Reversed.