607 S.E.2d 849

**JAMES F. HUMPHREYS & ASSOCIATES, L.C., Petitioner Below, Appellant**

v.

**BOARD OF REVIEW, West Virginia Bureau of Employment Programs; Robert J. Smith, Commissioner, West Virginia Bureau of Employment Programs; and Elizabeth I. Cannafax, Respondents Below, Appellees.**

**No. 31731.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2004.

Decided Dec. 1, 2004.

Concurring Opinion of Justice Albright Dec. 6, 2004.

---

Frederick F. Holroyd, Esq., Frederick F. Holroyd, III, Esq., Holroyd & Yost, Charleston, for Appellant.

Elizabeth I. Cannafax, Pro Se.

PER CURIAM.

In this appeal, the appellant, James F. Humphreys & Associates, L.C., claims that the Circuit Court of Kanawha County erred in failing to reverse a decision of the Board of Review of the West Virginia Bureau of Employment Programs, and in failing to hold that the appellee Elizabeth I. Cannafax had been discharged from employment for misconduct and was thus temporarily disqualified from receiving unemployment compensation benefits under the provisions of W. Va. Code 21A–6–3.[1]

## I.

## FACTS

On October 1, 2000, the appellee Elizabeth I. Cannafax was hired by the appellant

---

1. West Virginia Code 21A–6–3 provides that an employee discharged from employment for misconduct as defined in the section, shall be disqualified from receiving unemployment compensation benefits "[f]or the week in which he was discharged for misconduct and the six weeks immediately following such week . . . ."

James F. Humphreys & Associates, L.C., to work as a settlement coordinator. According to the petition in the present case, on August 23, 2002, Ms. Cannafax became involved in a disagreement with another of the appellant's employees on the appellant's premises. Later, Ms. Cannafax made threats against the employee and displayed or brandished a knife wrapped in a paper towel. Subsequently, on August 26, 2002, the appellant terminated Ms. Cannafax's employment.

Following her discharge, Ms. Cannafax filed an application for unemployment compensation benefits, and the appellant took the position that she was temporarily disqualified from receiving such benefits because she had been discharged for misconduct.

Ms. Cannafax's application, as well as the appellant's objection, were considered by a deputy who, on September 19, 2002, found that Ms. Cannafax "did commit an act of gross misconduct." The deputy's decision also stated that Ms. Cannafax "was discharged because she invited the office snitch to come to the break room and confront her. The claimant [Ms. Cannafax] took a concealed knife with her."

Ms. Cannafax appealed the deputy's decision and hearings were conducted in the case by an administrative law judge. During hearings, Wade Miller, the office manager for the appellant, testified on behalf of the appellant. Mr. Miller was asked: "Tell me just in your words why the Employer found it necessary to discharge Ms. Cannafax from her employment." Mr. Miller responded: "On that day, August 23, Ms. Cannafax approached a receptionist in the lobby brandishing a weapon—a knife to be exact, and made verbal threats related to inflicting bodily harm on other employees in the office." Mr. Miller proceeded to state that Ms. Cannafax felt that employees were snitching on her, telling things about her or her work activities. He also admitted, however, that he did not personally witness any of this and that none of it was stated within his personal hearing.

Mr. Miller further informed the administrative law judge that he had affidavits of employees who did, in fact, witness the event, and he moved that they be made a part of the record. The affidavits were presented to Ms. Cannafax at the hearing, and she was asked after she had had an opportunity to review them and whether she had any objection to them. She indicated that she had no objection, and thereupon, the administrative law judge admitted the affidavits into evidence. He, however, further stated that he did this with the understanding that these were extra-judicial statements. He further stated: "I will afford them such weight as I feel appropriate under such circumstances, particularly after listening to the claimant's testimony."

Later in the hearing, Ms. Cannafax herself testified that on the day of her discharge, she had been unable to take medication for post-traumatic stress panic disorder and major depression. She admitted that she had brandished a knife at work; however, she denied doing it in a threatening manner. She stated: "I never threatened anybody. I just said if—I would like the local snitch to come down and meet me. I never threatened." When asked whether she had a knife, she responded that she did. She stated: "It was in a napkin in my pocket and then I brought it out, but it was in the napkin." When asked why she brought it out, she stated that she didn't know why.

After the conclusion of the hearings, the administrative law judge ruled that the claimant was discharged from her most recent employment, but not for misconduct. The administrative law judge stated: "The only evidence supplied by the employer, which would indicate any misconduct on behalf of the claimant, was hearsay evidence. . . . The employer produced no competent evidence of misconduct, hence, none is found." In ruling, the administrative law judge, in effect, reversed the decision of the deputy in the case.

The appellant appealed the decision of the administrative law judge to the Board of Review of the West Virginia Bureau of Employment Programs, and the Board of Review affirmed the decision of the administrative law judge that Ms. Cannafax was discharged, but not for misconduct.

The appellant then appealed the Board of Review's decision to the Circuit Court of Kanawha County. The circuit court, after reviewing the record developed, affirmed the decision of the Board of Review. The circuit court stated: "This Court finds the decision of the West Virginia State Bureau of Employment Programs Board of Review is not clearly wrong or in violation of applicable law." It is from the circuit court's decision that the appellant now appeals.

## II.

### STANDARD OF REVIEW

In Syllabus Point 3 of *Adkins v. Gatson,* 192 W.Va. 561, 453 S.E.2d 395 (1994), this Court stated:

The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*

## III.

### DISCUSSION

In the present case, the appellant claims that the evidence developed establishes that Ms. Cannafax was discharged for misconduct, and that under the circumstances, the circuit court, as well as the Board of Review and the hearing examiner, erred in holding that the evidence did not show that she was discharged for misconduct.

W. Va.Code 21A–6–3 provides for the disqualification of employees from receiving benefits under the Unemployment Compensation Act. A portion of that statute, W. Va.Code 21A–6–3(2), provides, in part, that if an employee is "discharged from his most recent work by one of the following reasons, or if he were discharged from his last thirty days employing unit for one of the following reasons: Misconduct consisting of willful destruction of his employer's property; assault upon the person of his employer or any employee of his employer; if such assault is committed at such individual's place of employment or in the course of employment; reporting to work in an intoxicated condition ... he shall be and remain disqualified for benefits...."

It is apparent from the reading of this section that the Legislature intended that an assault by an employee upon another employee at an employer's place of business, or in the course of employment, shall constitute disqualifying misconduct.

In addition to designating misconduct as a disqualifying circumstance in an unemployment compensation case, the Legislature in W. Va.Code 27A–7–13 has specifically authorized the Board of Review to establish rules for the conduct of and determination of benefit cases. That Code section specifically provides, in part:

The board shall establish, and may from time to time modify and amend, rules and regulations for:

\* \* \*

(4) Determining the rights of the parties; and the rules need not conform to the common-law or statutory rules of evidence and procedure and may provide for the determination of questions of fact according to the predominance of the evidence.

Pursuant to this, the Board of Review has adopted a regulation which provides, in part:

Hearings shall be conducted informally and in such manner as to bring out the facts relevant to the determination of the application. All testimony at the hearing shall be by oath or affirmation and shall be recorded but need not be transcribed unless requested by any party in interest. The employer may make a written submission of the facts involved and shall be permitted a reasonable opportunity to present oral argument, supplemented by written briefs, upon the questions involved. The Commissioner or his special deputy may decide the questions on the basis of such stipulation and arguments, or may, in his discretion, set the questions for hearing

and take such further evidence as he deems necessary.

83 C.S.R. § 17.2.

As has previously been indicated in the present case, Ms. Cannafax's own testimony indicates that on the date of her alleged misconduct, she brandished a knife wrapped in a napkin at fellow employees and stated: "I would like the local snitch to come down and meet with me." Although she also indicated that, in her own mind, she was not being threatening, the objective circumstances were such that a reasonable person might have concluded that she was, in fact, being threatening.

■ This Court believes that the affidavit of Amber Harper, to the admission of which Ms. Cannafax made no objection, was a written submission which should be considered evidence under 83 C.S.R. § 17.2. It plainly stated that Ms. Cannafax brandished a knife in her presence and said: "The next person who came down after her was going to get it and she was tired of everything." According to the affidavit, Ms. Cannafax said: "I'm not kidding, they're going to get it."

This Court believes that Ms. Cannafax's testimony, taken in conjunction with the affidavits filed by the employer, supports the conclusion that she did assault fellow employees in the course of her employment, and at her employer's place of business.

As has previously been stated, this conduct, under W. Va.Code 21A–6–3(2), assault on a fellow employee at the employer's place of business, does constitute misconduct sufficient to disqualify an individual seeking unemployment compensation benefits.

In view of this, this Court believes that the ruling of the Board of Review that there was no evidence showing that Ms. Cannafax engaged in misconduct sufficient to disqualify her was clearly wrong, and that the deputy was correct in concluding that she was disqualified from receiving unemployment compensation benefits. Similarly, the Court believes that the circuit court was clearly wrong in affirming the Board of Review's decision.

The judgment of the Circuit Court of Kanawha County is, therefore, reversed, and this case is remanded with directions that Ms. Cannafax be temporarily disqualified from receiving unemployment compensation benefits as provided by W. Va.Code 21A–6–3.

Reversed and remanded with directions.

MAYNARD, Chief Justice, concurring.

This case required the Court to determine whether Ms. Cannafax should have been awarded unemployment benefits. Initially, I applaud the majority opinion for correctly concluding that Ms. Cannafax should not receive such benefits. However, while I agree with the majority opinion's result, I do not believe that it went far enough to send a clear and strong message that such irresponsible, dangerous, and reckless behavior will not be tolerated and certainly will not be rewarded with government benefits. It is my firm belief that we should have created a new syllabus point based on the statutes governing this case and making it abundantly clear that if you commit a criminal act and are subsequently fired for that act, you cannot receive unemployment benefits-period! Nonetheless, for some mysterious reason, the majority of this Court would not agree to such a clear statement of the law.

Likewise, the majority opinion curiously did not discuss the four new syllabus points in *Dailey v. Board of Review*, 214 W.Va. 419, 589 S.E.2d 797 (2003), where this Court, in my view, incorrectly reversed the findings of the Board of Review and provided unemployment benefits to an individual. In that case, the appellant was hired by Executive Air Terminal Inc. to drive gasoline trucks and was required to drive off the airport property to obtain bulk gasoline and deliver passengers on public roads. As a part of his employment, the appellant indicated that he maintained a valid driver's license. When his employer realized that the appellant's license had been suspended in 1996 and that he was subjecting Executive Air to potential liability, Executive Air discharged him. The Board of Review then concluded that the appellant had been terminated for gross misconduct and denied the appellant unemployment compensation benefits. This Court reversed the decision below and allowed the appellant to receive unemployment compensation benefits

because he had only "engaged in simple misconduct by failing to indicate that his driver's license had been suspended and by permitting his employer to continue to believe that he maintained a valid driver's license...." I joined in Justice Davis' dissent in that case where she stated:

> Under the decision reached by the majority opinion in this case, every employer in the State of West Virginia must provide unemployment compensation benefits to employees who are terminated for obtaining employment through fraudulent misrepresentation and engaging in on-the-job criminal conduct prior to being terminated. I find the majority opinion to be offensive to every employer and citizen of West Virginia. Therefore, for the reasons provided below, I dissent.

214 W.Va. at 428, 429, 589 S.E.2d at 806, 807. After reviewing and comparing the circumstances in *Dailey*, where the appellant's fraudulent misrepresentation was not sufficient to deny him unemployment compensation benefits, with the facts in this case, where Ms. Cannafax's behavior was sufficient to deny her benefits, I believe that this Court should revisit this issue and clarify obvious inconsistencies between the two cases. The first step would have been to create a new syllabus point in today's case that would set forth clear and concise language denying unemployment benefits to criminals.

The facts of this case clearly indicate that Ms. Cannafax brandished a deadly weapon in the workplace and then incredibly had the audacity to apply for unemployment benefits after her employment was terminated for such behavior. I believe that a simple review of the facts (many of which are not included in the majority opinion) is necessary to illustrate all the surrounding circumstances of Ms. Cannafax's termination for committing an act of gross misconduct. The record indicates that on Friday, August 23, 2002, the day began with Ms. McLane, the office manager and Ms. Cannafax's immediate supervisor, informing Ms. Cannafax that she should only be taking two breaks per day instead of four. Thereafter, Ms. Cannafax abruptly informed Ms. McLane that she had a doctor's appointment on the following Monday, August 26, 2002, and further stated that she would probably be "locked up" after seeing the doctor because she felt suicidal. Ms. McLane advised Ms. Cannafax to calm down and to continue doing her job explaining that she was not in trouble for taking too many breaks. Later that day, Ms. Cannafax entered the office lunchroom and glared at Ms. McLane several times in an angry and threatening manner in front of other employees. Soon afterward, both Ms. Cannafax and Ms. McLane went to Ms. McLane's office to discuss the situation. Ms. Cannafax indicated that she was tired of people in the office who were out to get her. After Ms. McLane told Ms. Cannafax that people in the office were not out to get her, Ms. Cannafax calmed down and then returned to work. At approximately 3:00 p.m. the same day, Ms. Cannafax, while standing at the receptionist's desk with a knife in her hand, stated to the receptionist, who was pregnant, that "the next person that comes after me is going to get it." Ms. Cannafax, with her knife still clutched in her hand, said, "I'm not kidding they're going to get it." Next, Ms. Cannafax proceeded to the third floor where Ms. McLane asked her what was wrong. According to Ms. McLane, Ms. Cannafax "went off on her" and then pointed a knife wrapped in a napkin in the air stating that she was going to use it on the office snitch. Ms. McLane then walked Ms. Cannafax out of the building and on Monday, August 26, 2002, her employment was terminated.

The facts of this case establish that this was not an isolated incident as Ms. Cannafax demonstrated unstable behavior throughout the entire day. Ms. Cannafax, who had previously taken medications for post traumatic stress, panic disorder, and major depression, was unquestionably exhibiting dangerous and unpredictable conduct that could have resulted in the stabbing of several employees-one of whom was pregnant! Even though this Court was entirely correct in reinstating the original September 19, 2002, decision of the Deputy Commissioner of the West Virginia Bureau of Employment Programs, we should have made it abundantly clear through a new syllabus point that such conduct will *never* be tolerated. The importance and necessity of such a syllabus point is plainly demonstrated by the fact that the administrative law judge, the Board of Review, and the circuit court all got it wrong and unbelievably found in favor

of unemployment benefits for Ms. Cannafax. Perhaps a clear and simple syllabus point stating that people who commit or threaten criminal acts in the workplace cannot receive unemployment benefits would have prompted all three reviewing agencies to get it right.

Therefore, for the reasons set forth above, I respectfully concur with the majority opinion.

ALBRIGHT, Justice, concurring.
(Filed Dec. 6, 2004)

In a separate opinion concurring with the result in this case, my colleague, the distinguished Chief Justice Elliott E. Maynard, suggests that this Court should supplement the legislative definition of *gross misconduct* which disqualifies one from receiving unemployment benefits indefinitely. I write separately to express strong opposition to that proposal.

This Court explained in *Dailey v. Board of Review*, 214 W.Va. 419, 589 S.E.2d 797 (2003), that our Legislature has created two levels of disqualification for receipt of unemployment benefits because of misconduct, unlike many other states which have only one category of disqualification. In West Virginia employee misconduct warrants a disqualification for benefits for six weeks unless the misconduct involves specific serious, statutorily defined conduct, referred to generally as *gross misconduct*.[1] An employee discharged for any of these specific acts is disqualified from receiving unemployment benefits not only for six weeks but indefinitely until the

employee has returned to covered employment for at least thirty days.[2]

My concurring colleague, Chief Justice Maynard, would have this Court add to the statute by judicial fiat. He would have this Court create through a syllabus point an indefinite disqualification for any employees "who commit or threaten criminal acts in the workplace." My colleague would have us create law stating that "if you commit a criminal act and are subsequently fired for that act, you cannot receive unemployment benefits—period!" I disagree for several reasons. Such broad sweeping rules are legally unjustified, legally improper, and would generate a myriad of difficulties in operation.

First and foremost, the actions warranting disqualification have already been specified by the legislature. The statute simply does not include the reason for indefinite disqualification for benefits my colleague seeks. "We must view the law as it is, and not as we might wish it to be." *Department of Econ. and Empl. Dev. v. Taylor*, 108 Md.App. 250, 671 A.2d 523, 537 (1996). It is not the function of this Court to engage in judicial expansion of the grounds for indefinite disqualification. "A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten." Syl. Pt. 1, *Consumer Advoc. Div. v. Public Serv. Comm'n*, 182 W.Va. 152, 386 S.E.2d 650 (1989).

Secondly, it is patently unfair to hold that violation of every criminal statute, no matter how minor, is automatic grounds for disquali-

---

1. West Virginia Code § 21A–6–3(2) (1990) (Repl. Vol.2002), in pertinent part, statutorily defines the more serious misconduct as follows:

   Misconduct consisting of willful destruction of his employer's property; assault upon the person of his employer or any employee of his employer; if such assault is committed at such individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance, or being under the influence of any controlled substance while at work; arson, theft, larceny, fraud or embezzlement in connection with his work; or any other gross misconduct; he shall be and remain disqualified for benefits until he has thereafter worked for at least thirty days in covered employment. . . .

2. An illuminating explanation of the statutory language regarding disqualification is contained in *Summers v. Gatson*, 205 W.Va. 198, 517 S.E.2d 295 (1999). The *Summers* Court observed as follows:

   The statutory language at issue in the case before us is byzantine in its complexity, but from the morass of dependent clauses one may distill the following: If one is discharged for misconduct, in general, one loses one's rights to unemployment compensation for six weeks, unless one is discharged (among other things) for theft or larceny in connection with one's work, in which case one is disqualified from receiving any unemployment compensation benefits until one has found a new job and worked for thirty days in covered employment. 205 W.Va. at 202, 517 S.E.2d at 299 (footnote and citation omitted).

fication for benefits. At one point in my colleague's concurring opinion, it appears that a disqualifying criminal act would only be one which occurred "in the workplace." However, at another point it appears that the author of that opinion would apply his disqualification rule to any criminal act for which an employee is fired. To "parade the horribles" under the latter scenario, an employee terminated from employment after committing a criminal act totally unrelated to the workplace, such as wearing a hat in a theater,[3] camping on county courthouse grounds without permission,[4] or engaging in the unauthorized use of a trash dumpster,[5] would be disqualified indefinitely under the rule proposed by the concurring opinion. Certainly my colleague would not consider such a result fair. Certainly a reasonable nexus between the alleged criminal act and the workplace should be required.

Thirdly, under the rule suggested by my colleague's concurring opinion, what burden of proof would be utilized in demonstrating that the alleged criminal act had actually been threatened or committed by the employee? While our jurisprudence clearly establishes that proof beyond a reasonable doubt is necessary in a criminal prosecution, this Court has previously stated that the standard to be employed in the administrative context of unemployment benefits is preponderance of the evidence.[6] Specifically, we recently allowed alleged criminal conduct to be proven by a mere preponderance of circumstantial evidence in a case involving the discharge of a member of the Department of Public Safety.[7] Thus, where no criminal conviction has been obtained against an employee, the new syllabus point suggested by my

colleague's concurring opinion invites the indefinite denial of unemployment benefits on a showing by a mere preponderance of the evidence that an employee threatened to or did commit a criminal act. My colleague would say to that employee, "you cannot receive unemployment benefits—period." What a prescription for rampant unfairness![8]

Ultimately, the determination of what actions warrant disqualification rests with the legislature. We are not here to express in case law what we wish the legislature had done.

Because I believe the case before us correctly applied the law to the facts of the case, I respectfully concur with the majority opinion, stating however my total disagreement with my colleague's concurring opinion seeking to write new law not found in the governing legislative enactment.

---

3. *See* W. Va.Code § 61–6–16 (1923) (Repl.Vol. 2000).

4. *See* W. Va.Code § 61–6–18 (1969) (Repl.Vol. 2000).

5. *See* W. Va.Code § 61–3–53 (1998) (Repl.Vol. 2000).

6. *See Summers,* 205 W.Va. at 202, 517 S.E.2d at 299 (holding that burden is upon employer to demonstrate, by preponderance of evidence, that claimant committed act in question). However, in the context of proving fraud, for example, the "elements must be proved by clear and convincing evidence." *Bowling v. Ansted Chrysler–Plym-*

*outh–Dodge, Inc.,* 188 W.Va. 468, 472, 425 S.E.2d 144, 148 (1992); *see also Gerver v. Benavides,* 207 W.Va. 228, 232, 530 S.E.2d 701, 705 (1999) (explaining that fraud is never presumed and must be proven by clear and distinct proof).

7. *See Montgomery v. State Police,* 215 W.Va. 511, 600 S.E.2d 223 (2004).

8. *See Wardell v. Director of Div. of Employ. Sec.,* 397 Mass. 433, 491 N.E.2d 1057, 1059 (1986) ("An admission to sufficient facts, absent a subsequent finding of guilt, does not constitute substantial evidence from which a finder of fact in a collateral civil proceeding can determine that the alleged misconduct has indeed occurred.").