505 S.E.2d 426

### OHIO VALLEY MEDICAL CENTER, INC., Plaintiff Below, Appellant,

v.

### Cathy S. GATSON, Clerk of the Circuit Court of Kanawha County; The Board of Review of the West Virginia Department of Employment Security; Phyllis H. Carter, Chairman; Harold E. Starr and Susan W. Hastings, Members; and Mary K. Bleifus, Defendants Below, Appellees.

No. 24975.

Supreme Court of Appeals of West Virginia.

Submitted. June 3, 1998.

Decided July 6, 1998.

Dissenting Opinion of Justice McCuskey July 15, 1998.

Jacqueline A. Koscelnik, DeForest & Koscelnik, for Appellant.

Randall Elkins, Department of Employment Security, Charleston, for Board of Review, Appellee.

Mary K. Bleifus, Wheeling, Pro Se, Appellee.

PER CURIAM: [1]

In this appeal the Ohio Valley Medical Center claims that the Circuit Court of Kanawha County erred in reversing a decision of the Board of Review of the West Virginia Department of Employment Security and in ruling that one of its former employees, Mary K. Bleifus, was entitled to unemployment compensation benefits. The Ohio Valley Medical Center had previously fired Ms.

---

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

Bleifus for gross misconduct, and the Board of Review of the West Virginia Department of Employment Security had determined that the circumstances were such that Ms. Bleifus was disqualified from receiving unemployment compensation benefits.

## I.

## FACTUAL BACKGROUND

The Ohio Valley Medical Center employed Mary K. Bleifus as a registered nurse, and from 1990 until early 1995, she apparently performed her duties in a satisfactory manner. In early 1995, however, the Ohio Valley Medical Center learned that she had made five medication errors within a short period of time. These errors included failing to give medication to a heart patient, and giving another patient medication which he should not have received. As a result of these errors, the Ohio Valley Medical Center counseled Ms. Bleifus and suspended her. After her return to work, she was placed on probation and counseled again. She was also warned, in writing, that similar errors in the future would result in her termination.

For a number of months during 1995 after her return to work, Ms. Bleifus performed her job with no known errors. Then, between December 1995, and January 1996, Ms. Bleifus committed a number of other medication errors. These included failing to administer an intravenous antibiotic to a postoperative patient and improperly completing order sheets which could have resulted in patients receiving improper medication dosages. After an investigation of these incidents, the Ohio Valley Medical Center terminated Ms. Bleifus' employment.

After termination of her employment, Ms. Bleifus applied for unemployment compensation benefits. The deputy who examined the claim concluded that Ms. Bleifus had been terminated for gross misconduct and ruled that she was disqualified from receiving compensation benefits under the provisions of W.Va.Code § 21A–6–3.[2] Ms. Bleifus appealed the ruling, and the administrative law judge reversed the deputy's ruling disqualifying Ms. Bleifus from receiving unemployment compensation benefits and held that she was entitled to benefits. The Board of Review subsequently reversed the decision of the administrative law judge's ruling and held that Ms. Bleifus was disqualified. Ms. Bleifus appealed this ruling to the Circuit Court of Kanawha County, and the circuit court, in an order entered October 7, 1997, reversed the decision of the Board of Review and held that Ms. Bleifus was entitled to unemployment compensation benefits. The circuit judge concluded that, even though Ms. Bleifus had been negligent, her negligence did not rise to the level of disqualifying misconduct and did not disqualify her from receiving unemployment compensation benefits.

## II.

## STANDARD OF REVIEW

■ In Syllabus Point 1 of *Raleigh County Board of Education v. Gatson*, 196 W.Va. 137, 468 S.E.2d 923 (1996), this Court stated the standard of review to be followed by a trial court in examining a decision of the Board of Review of the West Virginia Department of Employment Security. The Court said:

"The findings of fact of the Board of Review of the West Virginia Department of Employment Security are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*" Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994).

---

**2.** W.Va.Code § 21A–6–3 provides, in relevant part:

Upon the determination of the facts by the commissioner, an individual shall be disqualified for benefits:

\*  \*  \*

(2) For the week in which he was discharged from his most recent work for misconduct and

the six weeks immediately following such week. . . .

*See also* Syllabus, *Belt v. Rutledge,* 175 W.Va. 28, 330 S.E.2d 837 (1985); Syllabus, *Oyler v. Cole,* 171 W.Va. 402, 299 S.E.2d 13 (1982); Syllabus Point 1, *Kisamore v. Rutledge,* 166 W.Va. 675, 276 S.E.2d 821 (1981). The Court also pointed out in the single syllabus of *Mercer County Board of Education v. Gatson,* 186 W.Va. 251, 412 S.E.2d 249 (1991), that " '[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof.' Syllabus Point 6, *Davis v. Hix,* 140 W.Va. 398, 84 S.E.2d 404 (1954)." In line with this, our decisions have held constantly that "unemployment compensation statutes should be liberally construed in favor of the claimant[.]" *Davenport v. Gatson,* 192 W.Va. 117, 119, 451 S.E.2d 57, 59 (1994). *See also Courtney v. Rutledge,* 177 W.Va. 232, 351 S.E.2d 419 (1986); *London v. Board of Review of Department of Employment Security,* 161 W.Va. 575, 244 S.E.2d 331 (1978). However, "[t]his 'liberality' rule is not to be utilized when its application would require us to ignore the plain language of the statute." *Adkins v. Gatson,* 192 W.Va., 561, 565, 453 S.E.2d 395, 399. (Citation omitted.)

This Court has also recognized that West Virginia's statutory eligibility and disqualification provisions concerning the receipt of unemployment compensation benefits establish a two-step process. *Hill v. Board of Review,* 166 W.Va. 648, 276 S.E.2d 805 (1981). The first step involves determining whether an individual is eligible to receive such benefits, and the second step is to consider whether the individual is disqualified. *Lough v. Cole,* 172 W.Va. 730, 310 S.E.2d 491 (1983).

In the instant case Ms. Bleifus has been determined to be eligible to receive unemployment compensation benefits at every level of the proceedings, and the Department of Employment Security does not contest that determination. The second step of the process is determining whether Ms. Bleifus was disqualified from receiving benefits because she was discharged for "gross misconduct."

### III.

### DISCUSSION

■ Although it appears that the circuit court in the present case improperly stated the standard of review to be employed in a case such as this,[3] it did not alter the actual findings of fact of the Board of Review relating to the nature of Mary K. Bleifus' conduct, but addressed the question of whether those findings supported the legal conclusion that Mary K. Bleifus had engaged in misconduct sufficient to disqualify her from receiving unemployment compensation benefits. In effect, the circuit court addressed a legal question. Where such a legal question is involved, Syllabus Point 1 of *Raleigh County Board of Education v. Gatson, id.,* indicates that deference is not due to the Board of Review, but that the question should be reviewed *de novo.*

■ Our law indicates simple negligence does not result in disqualification; on the other hand, negligence of an extreme degree which is so recurrent as to show a substantial disregard for the employee's duties to his employer can result in disqualification. *Kirk v. Cole,* 169 W.Va. 520, 288 S.E.2d 547 (1982). In cases of doubt, the law favors the construction which does not work a disqualification. *Peery v. Rutledge,* 177 W.Va. 548, 355 S.E.2d 41 (1987).

In the present case it appears that the circuit court did carefully examine the conduct of Mary K. Bleifus and did conclude that it was negligent but that it was not so

---

**3.** The circuit court stated:

> As between the ALJ, the Board of Review and this Court, the ALJ is in the best position to make judgments respecting the weight to be give[n] to the evidence presented at the administrative hearing. It is he who is best able to judge the demeanor of the witnesses and to determine the weight to be given their testimony. The ALJ's determination that the petitioner did not engage in conduct which constituted

> a wanton or willful disregard of the employer's interest or carelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent or evil design, is entitled to deference.

Under the law, however, the circuit court is required to give deference to the findings of fact of the Board of Review. *Raleigh County Board of Education v. Gatson,* 196 W.Va. 137, 468 S.E.2d 923 (1996).

negligent as to constitute "gross misconduct" which would disqualify her from receiving unemployment compensation benefits. The facts do create some doubt, but it appears that the circuit court favored the construction which did not work a disqualification. This is precisely what the court was required to do by *Peery v. Rutledge, id.*

In view of the foregoing, the Court believes that the circuit court properly decided this case and that the circuit court's judgment should be affirmed.

Affirmed.

McCUSKEY, Justice, dissenting:

(Filed July 15, 1998)

Judges can be reasonable people and reasonable people can disagree. That being said, it is difficult to understand how, after examining the conduct of the appellant, a registered nurse, the majority could reasonably conclude that her life-threatening errors did not constitute gross misconduct justifying her termination. After making five separate patient medication errors in a short period of time, the appellant was warned and suspended by the hospital that employed her. This rather lenient discipline failed to reform her behavior and she subsequently committed a number of similar errors, including failing to administer intravenous antibiotics to a post-operative surgical patient. Only then was she terminated. Would this Court be as sympathetic to the hospital if it had not discharged this employee and were then sued by the loved ones of a patient who died as a result of her misconduct?

Based on the foregoing, I dissent from the majority's opinion. I am authorized to state that Justice MAYNARD joins me in this dissent.