589 S.E.2d 797

Gary DAILEY, Petitioner,

v.

**BOARD OF REVIEW, WEST VIRGINIA BUREAU OF EMPLOYMENT PROGRAMS; William F. Vieweg, Commissioner, Bureau of Employment Programs; and Executive Air Terminal, Inc., Respondents.**

**No. 30730.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 23, 2003.

Decided Nov. 10, 2003.

Dissenting Opinion of Justice Davis Nov. 14, 2003.

Concurring Opinion of Justice Starcher Dec. 12, 2003.

Davis, J., dissented and filed opinion in which Maynard, J., joined.

Starcher, C.J., concurred and filed opinion.

Thomas P. Maroney, Charleston, for the Petitioner.

Fred F. Holroyd, Holroyd & Yost, Charleston, for the Respondent, Executive Air Terminal.

ALBRIGHT, Justice:

This is an appeal by Gary Dailey (hereinafter "Appellant") from a November 9, 2001, final order of the Circuit Court of Kanawha County affirming an order of the Board of Review of the West Virginia Bureau of Employment Programs (hereinafter "Board") which held that the Appellant had been terminated from his employment for gross misconduct and denied the Appellant unemployment compensation benefits. On appeal, the Appellant contends that the Board and lower court erred in finding sufficient evidence of gross misconduct and in denying him unemployment compensation benefits. After thorough review of the record and arguments of

counsel, we reverse the findings of the Board and the lower court and determine that the Appellant was properly discharged for misconduct, but not gross misconduct. We also remand the case for further proceedings consistent with this opinion.

## I. Facts and Procedural History

The Appellant was hired by Executive Air Terminal, Inc., (hereinafter "Executive") on May 1, 2000, as a line technician.[1] The Appellant's duties included driving gasoline trucks and also required him to drive off the airport property to obtain bulk gasoline and deliver passengers on public roads. When the Appellant was initially hired by Executive, the evidence presented below indicated that he represented that he maintained a valid driver's license. Subsequent to several unsuccessful attempts to obtain a copy of that driver's license, Executive contacted the West Virginia Department of Motor Vehicles and learned that the Appellant's license had been suspended in 1996. Upon realizing that the Appellant was performing his driving duties without a valid license and subjecting Executive to potential liability, Executive discharged the Appellant on June 6, 2000, based upon his lack of a valid West Virginia driver's license.[2] The Board concluded that the Appellant had been terminated for gross misconduct and denied the Appellant unemployment compensation benefits. The lower court affirmed that determination. The Appellant now appeals to this Court.

## II. Standard of Review

■ In syllabus point three of *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994), this Court explained the following standard of review:

The findings of fact of the Board of Review of the [West Virginia Bureau of Employment Programs] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo.*

Our review of this matter is further governed by our consistent recognition that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syl. Pt. 6, *Davis v. Hix*, 140 W.Va. 398, 84 S.E.2d 404 (1954); *see also* Syl. Pt. 2, *Smittle v. Gatson*, 195 W.Va. 416, 465 S.E.2d 873 (1995); Syl. Pt. 1, *Perfin v. Cole*, 174 W.Va. 417, 327 S.E.2d 396 (1985). We have also asserted that "unemployment compensation statutes should be liberally construed in favor of the claimant[.]" *Davenport v. Gatson*, 192 W.Va. 117, 119, 451 S.E.2d 57, 59 (1994). Syllabus point one of *Peery v. Rutledge*, 177 W.Va. 548, 355 S.E.2d 41 (1987), also instructs that "[d]isqualifying provisions of the Unemployment Compensation Law are to be narrowly construed."

## III. Discussion

### A. West Virginia Statutory Guidance

■ Pursuant to West Virginia Code § 21A-6-3 (1990) (Repl. Vol. 2002), individuals are disqualified from obtaining unemployment benefits for six weeks[3] if the termination of their employment was due to misconduct and are disqualified indefinitely if the termination was due to gross misconduct.[4] The obvious question is therefore

---

1. The Appellant had previously been employed by Executive from May 2, 1994, through July 16, 1999, at which time he decided to pursue other employment.

2. The Appellant contends that the issue of a valid driver's license was not the sole basis for his termination. Rather, he contends that his involvement with a union organizing drive agitated his employer and caused his discharge. Our review of that issue leads to the conclusion that the employer attempted to locate a copy of the Appellant's driver's license prior to learning of his union activity. Valid driver's licenses were obtained from other employees serving in the Appellant's capacity, and there is no evidence

indicating that the Appellant was targeted based upon his union activity. The absence of the valid driver's license appears to be the exclusive reason for the Appellant's discharge. We find arguments to the contrary meritless.

3. Specifically, the statute provides the an individual terminated for misconduct is disqualified for the week in which he was terminated and the next six weeks. W. Va.Code § 21A-6-3(2).

4. The employee regains eligibility to receive benefits only after completing 30 working days in other covered employment. W. Va.Code § 21A-6-3(2).

whether the action which precipitated the termination constituted simple misconduct or gross misconduct. The statute provides minimal guidance on this distinction, failing to provide a definition for simple misconduct and providing the following commentary on gross misconduct:

Misconduct consisting of willful destruction of his employer's property; assault upon the person of his employer or any employee of his employer; if such assault is committed at such individual's place of employment or in the course of employment; reporting to work in an intoxicated condition, or being intoxicated while at work; reporting to work under the influence of any controlled substance, or being under the influence of any controlled substance while at work; arson, theft, larceny, fraud or embezzlement in connection with his work; or any other gross misconduct[.] ... Provided, That for the purpose of this subdivision the words "any other gross misconduct" shall include, but not be limited to, any act or acts of misconduct where the individual has received prior written warning that termination of employment may result from such act or acts.

W. Va.Code § 21A–6–3(2).

## B. West Virginia Decisional Precedent

In *Kirk v. Cole,* 169 W.Va. 520, 288 S.E.2d 547 (1982), this Court held that absence from work due to illness did not constitute misconduct and that an employee was not totally disqualified from receiving benefits subsequent to her discharge for excessive absenteeism due to illness. In discussing the statutory guidance regarding unemployment compensation, the *Kirk* Court adopted a definition of misconduct, explaining as follows:

This Court has not previously had occasion to consider the meaning of the term "misconduct" as it is used in the unemployment compensation statute. However, in jurisdictions that have been faced with the question a general definition of misconduct has evolved. As stated in *Carter v. Michigan Employment Security Commission,* 364 Mich. 538, 111 N.W.2d 817 (1961), misconduct is:

conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute.

169 W.Va. at 524, 288 S.E.2d at 549.

This issue was later addressed in *Federoff v. Rutledge,* 175 W.Va. 389, 332 S.E.2d 855 (1985), where this Court found that the record was sufficient to support a finding of misconduct but was insufficient to support a conclusion that the employee had been discharged for gross misconduct. In *Federoff,* this Court noted that "[a]s is true in many other jurisdictions, the term 'misconduct' is not defined in the unemployment compensation statutes of this State." 175 W.Va. at 392, 332 S.E.2d at 858. The *Federoff* Court thereafter recognized this Court's reliance upon the Michigan definition of misconduct in *Kirk* and again utilized such definition. The *Federoff* Court examined the legislative statements regarding gross misconduct and the examples thereof listed in the statute and found that "[t]he legislature, by requiring notice in writing, obviously intended to interject minimal standards of due process into the procedure where acts of ordinary misconduct can trigger full disqualification for unemployment compensation." 175 W.Va. at 395, 332 S.E.2d at 860. Because the employer in that case chose not to issue a written warning, "under the unambiguous language of the statute, the appellant's discharge did not meet the legislative definition of gross misconduct warranting permanent disqualification from the receipt of unemployment compensation." *Id.* at 395, 332 S.E.2d at 860.

Similarly, in *Courtney v. Rutledge*, 177 W.Va. 232, 351 S.E.2d 419 (1986), this Court employed the Michigan definition of misconduct to conclude that because written instructions provided by an employer did not indicate that failure to follow the instructions would result in the employee's termination, an employee who failed to follow the written instructions had not engaged in conduct falling within the statutory definition of gross misconduct. The employee was deemed guilty of simple misconduct and was thus subject to only a six week disqualification from unemployment compensation benefits. *Id.* at 235–36, 351 S.E.2d at 422.

In *Peery*, this Court once again employed the Michigan definition of misconduct and held that a claimant may be disqualified from receiving unemployment benefits for misconduct evincing such willful and wanton disregard of employer's interest as is found in deliberate violations or disregard of standards of behavior which employer has right to expect of an employee. 177 W.Va. at 551, 355 S.E.2d at 44. The *Peery* Court concluded that the employee's refusal to drive a truck over mountainous roads after working a full shift did not constitute misconduct where the employee had expressed his belief to employer that driving the route in an exhausted condition after five hours of strenuous labor would risk his life or the lives of others. *Id.* at 553, 355 S.E.2d at 46. "The term 'misconduct' should be construed in a manner most favorable to not working a forfeiture. The penal character of the provision should be minimized by excluding cases not clearly intended to be within the exception denying unemployment compensation benefits." *Id.* at 551, 355 S.E.2d at 44.

In *Foster v. Gatson*, 181 W.Va. 181, 381 S.E.2d 380 (1989), this Court again used the Michigan definition of misconduct and held that a driver who had been negligent on the job had not engaged in misconduct for purposes of unemployment compensation disqualification. In *Ohio Valley Medical Center, Inc. v. Gatson*, 202 W.Va. 507, 505 S.E.2d 426 (1998), this Court found that the lower court had properly concluded that a nurse's misconduct in failing to administer an antibiotic to a patient and in improperly completing order sheets, was not so negligent as to constitute gross misconduct. The Court reasoned as follows:

In the present case it appears that the circuit court did carefully examine the conduct of Mary K. Bleifus and did conclude that it was negligent but that it was not so negligent as to constitute "gross misconduct" which would disqualify her from receiving unemployment compensation benefits. The facts do create some doubt, but it appears that the circuit court favored the construction which did not work a disqualification. This is precisely what the court was required to do by *Peery v. Rutledge* . . . .

202 W.Va. at 510–11, 505 S.E.2d at 429–30.

In *Metropolitan Life Insurance Co. v. Gatson*, 200 W.Va. 656, 490 S.E.2d 743 (1997), this Court once again utilized the Michigan definition for misconduct in affirming an award of benefits to an employee who had been discharged for insubordination in connection with using a privately retained and paid secretary. We reasoned as follows:

If Mr. Cutright had continued to allow his privately retained secretary to access Metropolitan's records after receiving written conformation [sic] of the prohibition, such acts would constitute "misconduct" because they would be a deliberate violation of the company policy and they would "show an intentional and substantial disregard of the employer's interest."

200 W.Va. at 660, 490 S.E.2d at 747 (citations omitted); *see also Summers v. Gatson*, 205 W.Va. 198, 517 S.E.2d 295 (1999).

In *UB Services, Inc. v. Gatson*, 207 W.Va. 365, 532 S.E.2d 365 (2000), this Court concluded that a claimant's act of savagely beating a co-worker during a domestic dispute at the claimant's residence was so outrageous that it shocked the conscience and constituted gross misconduct, despite the fact that the beating did not occur on the employer's premises. 207 W.Va. at 369, 532 S.E.2d at 369. However, in the course of reaching its conclusion, the *UB Services* Court characterized the Michigan definition of misconduct,

found in *Carter* and quoted above,[5] as a definition of *gross* misconduct, not just "misconduct." Because that characterization appears to be a departure from prior case law in this state and elsewhere, we pause for a closer look at the context in which that popular definition has been employed here and elsewhere.

First, it appears that neither the Michigan statute [6] under examination in *Carter* nor the Wisconsin statute in *Boynton Cab Co.*, from which the Michigan court adopted its Carter definition, contained a statutory distinction between "misconduct" generally and some form of aggravated misconduct, such as "gross" misconduct, found in our statute. Secondly, in this Court's present attempt to fashion a workable differentiation between simple misconduct and gross misconduct, we find it instructive to examine the methodology employed by other jurisdictions which employ a statutory distinction between simple misconduct and gross misconduct.

### C. Foreign Jurisdictions—Distinction Between Misconduct and Gross Misconduct.

Unemployment compensation structures utilized in other jurisdictions provide guidance regarding the distinction between simple and gross misconduct and the application of that distinction to the particular factual circumstances of a given termination matter. Our review of the procedures utilized by other jurisdictions reveals that approximately twenty-two state unemployment statutes distinguish between simple misconduct and gross misconduct in determining periods of disqualification.

Many of these statutory guidelines discuss gross misconduct in terms of its character as a criminal violation of some nature. For instance, the definition of gross misconduct in several states is couched in terms of whether the action of the employee qualifies as criminal misconduct. In *KBI, Inc. v. Review Board of Indiana Department of Workforce Development*, 656 N.E.2d 842 (Ind.App. 1995), for example, the Indiana court exam-

ined Indiana Code § 22–4–15–6.1, addressing the issue of discharge for gross misconduct, and relied upon specific statutory language to the effect that " 'gross misconduct' includes a felony or a Class A misdemeanor committed in connection with work but only if the felony or misdemeanor is admitted by the individual or has resulted in a conviction." 656 N.E.2d at 848, quoting Indiana Code § 22–4–15–6.1. The Indiana definition for simple misconduct, almost identical to the Michigan definition adopted by this Court, was explained as follows in *Arthur Winer, Inc. v. Review Board of Indiana Employment Security Division*, 120 Ind.App. 638, 95 N.E.2d 214 (1950):

> It is conduct 'evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.'

95 N.E.2d at 216 (internal citations omitted); *see also Meulen v. Review Bd. of Indiana Employment Sec. Div.*, 527 N.E.2d 729, 730 (Ind.App.1988); *White v. Review Bd. of Indiana Employment Sec. Div.*, 151 Ind.App. 426, 280 N.E.2d 64,65 (1972).

In Kansas, gross misconduct is simply defined as "conduct evincing extreme, willful or wanton misconduct. . . ." K.S.A. 44–706(b)(1) (2000). The Kansas statute provides that misconduct is "a violation of a duty or obligation reasonably owed the employer as a condition of employment." *Id; see also National Gypsum Co. v. State Employment Sec. Bd. of Review*, 244 Kan. 678, 772 P.2d 786, 789 (1989).

In Nebraska, "misconduct" is not specifically defined by statute, but it

---

5. The Michigan court adopted the definition of misconduct utilized by the Wisconsin Supreme Court in *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941).

6. Michigan Comp. Laws Supp.1956, § 421.29.

has generally been defined to include behavior which evidences (1) wanton and willful disregard of the employer's interests, (2) deliberate violation of rules, (3) disregard of standards of behavior which the employer can rightfully expect from the employee, or (4) negligence which manifests culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or of the employee's duties and obligations.

*Stuart v. Omaha Porkers,* 213 Neb. 838, 331 N.W.2d 544, 546 (1983). In distinguishing between simple misconduct and gross misconduct, the Nebraska court noted as follows in *Poore v. City of Minden,* 237 Neb. 78, 464 N.W.2d 791 (1991): "The term 'gross' is defined by Webster's Third New International Dictionary, Unabridged 1002 (1981) as 'b(1) glaringly noticeable: FLAGRANT ... (2): OUT–AND–OUT, COMPLETE, UTTER, UNMITIGATED, RANK.'" 464 N.W.2d at 793.

In Maryland, the statutory scheme is divided into misconduct, aggravated misconduct, and gross misconduct. The statutory definition of gross misconduct is provided by Maryland statute, Labor & Employment § 8–1002, as follows: "conduct of an employee that is: (i) deliberate and willful disregard of standards of behavior that an employing unit rightfully expects and that shows gross indifference to the interests of the employing unit; or (ii) repeated violations of employment rules that prove a regular and wanton disregard of the employee's obligations...." The reviewing courts in Maryland have recognized that "[t]here are no hard and fast rules for determining what in the particular employment context constitutes 'deliberate and willful misconduct.'" *Department of Labor, Licensing and Regulation v. Muddiman,* 120 Md.App. 725, 708 A.2d 47, 54 (1998). Such a determination will be altered with individual cases, and the impropriety of the conduct under examination must be judged within the particular employment context in which it occurs. *Employment Sec. Bd. of Md. v. LeCates,* 218 Md. 202, 145 A.2d 840, 844 (1958). Certain types of conduct will be so egregious that they will be considered misconduct even where no specific rule prohibits such conduct. *Id.*

In *Giles v. District of Columbia Department of Employment Services,* 758 A.2d 522 (D.C.App.2000), the District of Columbia Court of Appeals analyzed D.C.Code § 46–111(b)(1) (1996), providing that the term gross misconduct shall be "determined under duly prescribed regulations." 758 A.2d at 524–25, quoting D.C.Code § 46–111(b). The *Giles* court found that according to regulations interpreting the amendments, 7 DCMR § 312 (1994), gross misconduct includes such acts as sabotage; unprovoked assault or threats; arson; theft or attempted theft; dishonesty; insubordination; repeated disregard of reasonable orders; intoxication or the use of or impairment by an alcoholic beverage, controlled substance, or other intoxicant; willful destruction or property; and repeated absences or tardiness after a warning. 758 A.2d at 525 n. 3. The regulations defined simple misconduct as "'an act or omission by an employee which constitutes a breach of the employee's duties or obligations to the employer, a breach of the employment agreement or contract, or which adversely affects a material employer interest ... includ[ing] those acts where the severity, degree or other mitigating circumstances do not support a finding of "gross misconduct."'" 758 A.2d at 525, quoting 7 DCMR § 312. Examples of misconduct provided by the regulations include: a minor violation of an employer's rules; unauthorized personal activities during business hours; absences or tardiness whose number or proximity in time does not rise to the level of gross misconduct; and inappropriate use of profane or abusive language. 758 A.2d at 525 n. 4.

### D. Resolution of the Misconduct/Gross Misconduct Distinction

#### 1. Gross Misconduct

■ Our examination of the specific guidance of the West Virginia statute, principles enumerated in prior West Virginia cases, and procedures employed in other jurisdictions which also maintain a distinction between simple misconduct and gross misconduct reveals that gross misconduct is typically defined as a more egregious form of simple misconduct. The definitions of gross miscon-

duct generally reference criminal activity or particularized ramifications of the act of simple misconduct. As a prime example, the West Virginia statute supports the conclusion that, for purposes of determining the level of disqualification for unemployment compensation benefits under West Virginia Code § 21A–6–3, an act of misconduct shall be considered gross misconduct where the underlying misconduct consists of (1) willful destruction of the employer's property; (2) assault upon the employer or another employee in certain circumstances; (3) certain instances of use of alcohol or controlled substances as delineated in West Virginia Code § 21A–6–3; (4) arson, theft, larceny, fraud, or embezzlement in connection with employment; or (5) any other gross misconduct which shall include but not be limited to instances where the employee has received prior written notice that his continued acts of misconduct[7] may result in termination of employment. *See* W. Va.Code § 21A–6–3. To the extent that *UB Services* implemented a definition for gross misconduct inconsistent with the foregoing, it is expressly overruled.

 Thus, we believe that the legislature's provisions regarding gross misconduct can be divided into three distinct categories: (1) those specifically enumerated acts which shall be considered gross misconduct; (2) items which may be interpreted to be "other gross misconduct;" and (3) acts of misconduct for which the employee has received prior written warning that continued violation will result in employment termination. Except where an employee has received a prior written warning, the phrase, "other gross misconduct," in West Virginia Code § 21A–6–3 evidences the legislature's intent to provide some element of discretion in the Board and reviewing courts, based upon the peculiar facts of each case. If, for example, the nature of the employer's business rendered an act of misconduct particularly dangerous, shocking, or egregious, the misconduct could legitimately be elevated to gross misconduct for purposes of determining unemployment compensation eligibility. Where the catch-all provision of "other gross misconduct" in

West Virginia Code § 21A–6–3 is utilized as a basis for denial of all unemployment compensation benefits in the absence of a qualifying prior written warning, the employer is required to furnish evidence that the act in question rises to a level of seriousness equal to or exceeding that of the other specifically enumerated items, and a resolution of matters brought under this subdivision must be analyzed on a case-by-case basis. Moreover, placement of a particular act in the category of gross misconduct should be carefully reviewed and should not be undertaken unless it is clear that such acts constitute gross misconduct as defined by the legislature.

### 2. Simple Misconduct

While the Michigan definition of misconduct consistently relied upon by this Court was not initially employed in a jurisdiction which differentiated between simple misconduct and gross misconduct, the components of that definition, including willful and wanton disregard of an employer's interests, deliberate violation of standards, and wrongful intent, appear to be widely accepted as the defining components of employee misconduct. As illustrated above in our examination of other jurisdictions, such definition for misconduct is accepted even in states which utilize a separate definition for the elevated degree of misconduct designated as gross misconduct.

 We conclude that the West Virginia construct mandates that simple misconduct includes those elements identified in *Kirk*; *Federoff*; *Courtney*; *Peery*; *Foster*, and *Metropolitan Life*, as based upon the Michigan definition of misconduct. Thus, for purposes of determining the level of disqualification for unemployment compensation benefits under West Virginia Code § 21A–6–3, simple misconduct is conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil de-

---

7. The term "misconduct," as used here, refers specifically to the definition adopted by this

Court in *Kirk*, 169 W.Va. at 524, 288 S.E.2d at 549.

sign, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

### E. Application to the Present Case

In resolving issues of unemployment compensation, this Court has consistently recognized that unemployment compensation statutes are to be construed liberally in favor of the claimant. Any doubt is to be resolved in favor of a construction which does not work a disqualification. *Ohio Valley,* 202 W.Va. at 510, 505 S.E.2d at 429. Moreover, the *Peery* Court specifically advised that unless a case is "clearly intended to be within the exception denying unemployment compensation benefits," it should not be so placed. 177 W.Va. at 551, 355 S.E.2d at 44. Thus, unless an act clearly falls within the purview of gross misconduct, as envisioned by the legislature, it should not be utilized as a basis for denying unemployment compensation benefits.

In the present case, while the employer contends that its exposure to liability as a result of the Appellant's actions creates a foundation for a finding of gross misconduct, we do not conclude that the Appellant's act of concealing his license suspension clearly falls within the legislature's enumeration of acts constituting gross misconduct. The Appellant's deception did not involve destruction of property, assault, alcohol or controlled substances, arson, theft, larceny, fraud, embezzlement, or an instance in which the Appellant had received prior written notice that his continued acts may result in termination of employment. *See* W. Va.Code § 21A–6–3. The only other legislatively authorized method of elevating the act to the level of gross misconduct would be inclusion within the catchall phrase, "other gross misconduct." Based upon our review of the record, as well as the actual and potential ramifications of the Appellant's actions upon the business of the employer, we do not believe that the Appellant's actions clearly constituted gross misconduct. As the *Peery* Court succinctly stated and we quoted above, "[t]he penal character of the provision should be mini-

mized by excluding cases not clearly intended to be within the exception denying unemployment compensation benefits." 177 W.Va. at 551, 355 S.E.2d at 44.

We consequently conclude that Mr. Dailey engaged in simple misconduct by failing to indicate that his driver's license had been suspended and by permitting his employer to continue to believe that he maintained a valid driver's license from his hiring date of May 1, 2000, to his termination date of June 6, 2000. The Appellant's conduct clearly constituted willful and wanton disregard of the employer's interests and thus satisfies the definition of misconduct utilized by this Court and other jurisdictions. The Appellant's conduct does not, however, constitute gross misconduct as that term is contemplated by the legislature. This Court has unyieldingly refrained from altering the tenor of a legislative enactment by appending additional elements to a statute. Where a statute is unambiguous, the incorporation of additional words, terms, or provisions is not the domain of the courts. *Mallamo v. Town of Rivesville,* 197 W.Va. 616, 477 S.E.2d 525 (1996); *Peyton v. City Council of Lewisburg,* 182 W.Va. 297, 387 S.E.2d 532 (1989); *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968).

Based upon the foregoing, we reverse the determination of the Board and the lower court and remand for further proceedings consistent with this opinion.

Reversed and Remanded.

Justice DAVIS files a dissenting opinion joined by Justice MAYNARD.

Chief Justice STARCHER concurs and files a concurring opinion.

DAVIS, J., dissenting:

(Filed Nov. 14, 2003)

Under the decision reached by the majority opinion in this case, every employer in the State of West Virginia must provide unemployment compensation benefits to employees who are terminated for obtaining employment through fraudulent misrepresentation and engaging in on-the-job criminal conduct prior to being terminated. I find the majori-

ty opinion to be offensive to every employer and citizen of West Virginia. Therefore, for the reasons provided below, I dissent.[1]

## I.

### Mr. Dailey Obtained Employment Through Fraudulent Misrepresentation

The majority opinion recognized that under W. Va.Code § 21A–6–3(2) a person discharged from employment for gross misconduct is not entitled to unemployment compensation. The majority opinion also acknowledged that under W. Va.Code § 21A–6–3(2) fraud constitutes gross misconduct. One of the major legal flaws in the majority opinion is its inexplicable failure to analyze the issue of fraudulent misrepresentation that existed in this case.

It has been recognized that the concept of fraud is quite broad:

> Fraud is sometimes defined as '[a] generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false suggestions or by suppression of truth, and includes all surprise, trick, cunning dissembling, and any unfair way by which another is cheated.'

*State ex rel. Medical Assurance of West Virginia, Inc. v. Recht,* No. 30840, 213 W.Va. 457, 473, 583 S.E.2d 80, 97 (2003) (Davis, J., concurring) (quoting *Volcanic Gardens Mgmt. Co. v. Paxson,* 847 S.W.2d 343, 347 (Tex.Ct.App.1993)). This Court has held that "[a]ctual fraud is intentional, and consists of an intentional deception or misrepresentation to 'induce another to part with property or to surrender some legal right, and which accomplishes the end designed.'"

*Gerver v. Benavides,* 207 W.Va. 228, 232, 530 S.E.2d 701, 705 (1999) (quoting *Stanley v. Sewell Coal Co.,* 169 W.Va. 72, 76, 285 S.E.2d 679, 683 (1981)). *See also Hager v. Hager,* No. 29688, Slip op. at 6, —— W. Va. ——, ——, —— S.E.2d ——, 2001 WL 1525190 (Nov. 29, 2001) (holding that appellee "in failing to testify fully and completely and honestly before the family law master, in effect, acted falsely and committed fraud."); *Kessel v. Leavitt,* 204 W.Va. 95, 127, 511 S.E.2d 720, 752 (1998) ("'A ... party's willful nondisclosure of a material fact that he knows is unknown to the other party may evince an intent to practice actual fraud.'" (quoting *Van Deusen v. Snead,* 247 Va. 324, 328, 441 S.E.2d 207, 209 (1994))); *Arnoldt v. Ashland Oil, Inc.,* 186 W.Va. 394, 404, 412 S.E.2d 795, 805 (1991) ("'Fraud means an intentional misrepresentation, deceit, or concealment of material fact known to the defendant and made with the intention of causing injury to the plaintiff.'" (quoting Ky.Rev. Stat. Ann. § 411.184(1)(b))); *Miller v. Huntington & Ohio Bridge Co.,* 123 W.Va. 320, 335, 15 S.E.2d 687, 695 (1941) ("'[F]raud includes cases of the intentional and successful employment of any cunning, deception, or artifice to circumvent, cheat or deceive another.'" (quoting 23 Am. Jur., *Fraud & Deceit* § 4, at 756 (1939))); *Holt v. King,* 54 W.Va. 441, 447, 47 S.E. 362, 365 (1903) ("The suppression of the truth is equivalent to the utterance of a falsehood, and both are frauds."); *Currence v. Ward,* 43 W.Va. 367, 377, 27 S.E. 329, 333 (1897) (Dent, J., concurring) ("'Fraud ... includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, or are injurious to another, or by which an undue advantage is taken of another.'" (quoting Story, Eq. Jur. § 187)). Moreover, as Justice Albright re-

---

1. The dispositive issue raised in this case by Gary Dailey was that he was fired because of union activities. Therefore, he should not have been denied unemployment compensation benefits. As an unsupportable and vaguely briefed argument, Mr. Dailey contended that even if he was validly fired, the conduct causing him to be fired was not gross misconduct. In order to achieve its result, the majority opinion inverted the arguments raised by Mr. Dailey. That is, the majority opinion was written in a manner that disingenuously gives the impression that the primary issue

raised by Mr. Dailey was that the conduct causing him to be fired was not gross misconduct. The majority opinion summarily disposed of the true basis for the appeal in footnote 2 of the opinion. The majority then goes on to transform Mr. Dailey's meritless *fallback* argument into the dispositive issue in the case. While I agree with the majority that Mr. Dailey's union activity argument was unsupportable, I disagree with the majority's resolution of Mr. Dailey's meritless contention that the conduct causing him to be fired was not gross misconduct.

cently observed in *Cordial v. Ernst & Young*, " '[w]here one person induces another to enter into a contract by false representations, which he is in a situation to know, and . . . does know the statements to be untrue, and, consequently, they are held to be fraudulent[.]' " 199 W.Va. 119, 130, 483 S.E.2d 248, 259 (1996) (quoting Syl. pt. 1, *Horton v. Tyree*, 104 W.Va. 238, 139 S.E. 737 (1927)).

In the instant proceeding, both the circuit court and the administrative law judge found that Mr. Dailey "misrepresented that he had a valid [driver's] license," and that this "misrepresentation constitutes gross misconduct." The majority opinion failed to perform an analysis to determine whether the "misrepresentation" rose to the level of fraud in order to support a finding of gross misconduct. It is obvious that the majority omitted such an analysis because to do so would defeat the majority's desired result.

The essential elements of noncriminal fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." Syl. pt. 1, in part, *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981). The facts in this case support a finding of fraud.

First, the fraudulent act in this case was Mr. Dailey's false representation of the status of his driver's license. The circuit court summarized this point as follows:

> [The employer] testified that when he interviewed [Mr. Dailey] in anticipation of [ ]hiring him, he asked [Mr. Dailey] if there were any problems with [his] operator's license. [Mr. Dailey] told [the employer] there were none.

Second, the issue of the status of Mr. Dailey's driver's license was material because the employment position he was seeking "required him to drive gasoline trucks used to fill airplanes at the airport . . . [and] required him to drive off airport property to pick up bulk gasoline and to deliver[ ] or pickup passengers on public roads." The record is clear. Mr. Dailey lied when he stated during the job interview that he had a valid driver's license. The employer hired Mr. Dailey on the basis that he had a valid driver's license.[2] Subsequent to hiring Mr. Dailey, the employer requested on several occasions that Mr. Dailey produce his driver's license for photocopying, as required by the employer's insurer. Mr. Dailey repeatedly offered excuses as to why he did not produce his driver's license when requested. The employer eventually obtained an official record from the Department of Motor Vehicles which indicated that Mr. Dailey's driver's license had been suspended *before and after* he was hired.

Third, the employer was damaged in several ways because of Mr. Dailey's fraudulent misrepresentations. The employer was forced to incur expenses associated with hiring a new driver because it had to fill the vacancy left when Mr. Dailey was fired. The employer also incurred legal expenses in having to defend against Mr. Dailey obtaining unemployment compensation for fraudulent conduct. Finally, Mr. Dailey's fraudulent conduct "was jeopardizing the employer, by potentially voiding the employer's insurance coverage in the case of an accident involving [him]."

It is clear to me that the misrepresentation found by the circuit court and the administrative law judge was not an inadvertent or inconsequential misrepresentation. The misrepresentation constituted fraud on the employer. As such, the misrepresentation was gross misconduct. In order for the majority opinion to conclude otherwise, it had to totally ignore the true posture of this issue and cast in a light that made it appear not to come under the fraud component of W. Va. Code § 21A–6–3(2). It is indeed a sad moment in West Virginia jurisprudence when our law blatantly permits wrongdoers to profit by their fraudulent conduct and penalizes the victims of fraud by making them pay the wrongdoers. *See UB Services, Inc. v. Gatson*, 207 W.Va. 365, 368, 532 S.E.2d 365, 368 (2000) ("[I]ndividuals should not benefit

---

2. As a result of Mr. Dailey having previously been employed by the employer, the employer reasonably believed that he was stating the truth when he said that he had a valid driver's license.

**431**

from their own misdeeds[.]"), *overruled by the majority opinion in this case.*

## II.

### The Majority Opinion Has Rewarded Mr. Dailey for Criminal Conduct

One of the most striking omissions in the majority opinion involves the lack of discussion concerning the criminal conduct that flowed from Mr. Dailey's fraudulent misrepresentation in obtaining employment. The majority omitted such discussion because including it would have weakened and undermined the outcome sought by the majority. I will take the opportunity to highlight only two of the obvious criminal offenses committed by Mr. Dailey.

*(1) Driving without a license.* The record in this case is not in dispute. Mr. Dailey did not have a valid driver's license when he was hired by the employer. The record is equally clear in showing that during the brief period of his employment, Mr. Dailey operated the employer's motor vehicle without a valid driver's license. The majority opinion totally disregarded the evidence indicating Mr. Dailey operated a motor vehicle without a valid driver's license.

Pursuant to W. Va.Code § 17B–2–1(a) (2000) (Repl. Vol. 2000) "[n]o person ... may drive any motor vehicle upon a street or highway in this state ... unless the person has a valid driver's license[.]" Further, under W. Va.Code § 17B–2–1(f), it is a misdemeanor offense for a person to operate a motor vehicle without a driver's license. Although Mr. Dailey violated W. Va.Code § 17B–2–1(a) by knowingly driving his employer's vehicle without a license, the majority has rewarded this criminal conduct with unemployment compensation benefits.

*(2) Obtaining money by false pretense.* Under W. Va.Code § 61–3–24(a)(1) (1994) (Repl. Vol. 2000) it is a criminal offense for "a person [to] obtain[ ] from another by any false pretense ... with intent to defraud, any money, goods or other property[.]" This offense is punishable as a felony or misde-

meanor, depending upon the value of the property unlawfully obtained. The essential elements of the crime of false pretense are: (1) the intent to defraud; (2) actual fraud; (3) the false pretense was used to accomplish the objective; and (4) the fraud was accomplished by means of the false pretense, *i.e.,* the false pretense must be in some degree the cause, if not the controlling cause, which induced the owner to part with his property.

*State v. Moore,* 166 W.Va. 97, 108, 273 S.E.2d 821, 829 (1980) (citation omitted).

In this case, Mr. Dailey sought to obtain a job, wages and employment benefits, all of which were the property of the employer, by fraudulently misrepresenting the status of his driver's license. This misrepresentation directly caused the employer to give Mr. Dailey a job, wages and employment benefits. *See State v. Zain,* 207 W.Va. 54, 528 S.E.2d 748 (1999) (upholding an indictment under W. Va.Code § 61–3–24 that charged a defendant with obtaining wages and employment benefits while fraudulently performing his work).

## III.

### The Majority Opinion "Stood Stare Decisis on its Ear" [3]

To reach the result sought by the majority it was necessary to overrule the recent decision of *UB Services, Inc. v. Gatson,* 207 W.Va. 365, 532 S.E.2d 365 (2000). In syllabus point 2 of *Dailey v. Bechtel Corp.,* 157 W.Va. 1023, 207 S.E.2d 169 (1974), this Court held:

An appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law.

As Justice Cleckley pointed out in *Banker v. Banker,* 196 W.Va. 535, 546 n. 13, 474 S.E.2d

**3.** *A & M Props., Inc. v. Norfolk S. Corp.,* 203 W.Va. 189, 197, 506 S.E.2d 632, 640 (1998)

(Starcher, J., dissenting).

465, 476 n. 13 (1996), "[s]tare decisis is the policy of the court to stand by precedent." That is, "[a]s a general rule, the principle of stare decisis directs us to adhere . . . to the holdings of our prior cases[.]" *County of Allegheny v. American Civil Liberties Union, Greater Pittsburgh Chapter*, 492 U.S. 573, 668, 109 S.Ct. 3086, 3141, 106 L.Ed.2d 472 (1989) (Kennedy, J., concurring and dissenting). Moreover, "[s]tare decisis rests upon the important principle that the law by which people are governed should be 'fixed, definite, and known,' and not subject to frequent modification in the absence of compelling reasons." *Bradshaw v. Soulsby*, 210 W.Va. 682, 690, 558 S.E.2d 681, 689 (2001) (Maynard, J., dissenting) (quoting *Booth v. Sims*, 193 W.Va. 323, 350 n. 14, 456 S.E.2d 167, 194 n. 14 (1995)). The majority decision to overrule *UB Services* is reprehensible. In fact, "[t]he author of the majority opinion has, in effect, 'stood stare decisis on its ear.'" *A & M Props., Inc. v. Norfolk S. Corp.*, 203 W.Va. 189, 197, 506 S.E.2d 632, 640 (1998) (Starcher, J., dissenting).

Some background information is necessary to understand the reasoning behind the majority's decision to overrule *UB Services*. *UB Services* involved the award of unemployment compensation to an employee who was terminated after assaulting a co-worker while off-duty. The employer argued that the assault by the employee constituted gross misconduct and that he should be denied unemployment compensation. In order to address this issue, the Court in *UB Services* set out various principles of law defining gross misconduct. The opinion in *UB Services* cited to the examples of gross misconduct found in W. Va.Code § 21A–6–3(2). The conduct by the employee did not fit under any of the enumerated examples. Consequently, the opinion looked to the catch-all provision of the statute that provided "or any other gross misconduct.".

In an effort to provide some structure and guidance to the phrase "any other gross misconduct," the opinion looked to a prior decision of this Court and stated the following:

> We have previously defined gross misconduct as:
>
> > . . . conduct evincing such willful and wanton disregard of an employer's interests as is found in deliberate violations *or disregard of standards or behavior which the employer has the right to expect of his employee,* or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. *Kirk v. Cole*, 169 W.Va. 520, 524, 288 S.E.2d 547, 550 (1982) (emphasis added) (quoting, *Carter v. Michigan Employment Security Commission*, 364 Mich. 538, 111 N.W.2d 817 (1961)).

*UB Services*, 207 W.Va. at 367, 532 S.E.2d at 367 (emphasis in original).[4] In view of this definition and other considerations, the decision in *UB Services* found that the off-duty conduct was gross misconduct that warranted a denial of unemployment compensation.

The definition for "any other gross misconduct" that was recognized in *UB Services* was overruled by the majority without explanation. It is easy to understand why the majority chose to overrule *UB Services*. All of the evidence in this case conclusively demonstrated that Mr. Dailey's conduct in lying to obtain employment and operating his employer's motor vehicle without a driver's li-

---

4. It is important to note that the definition of gross misconduct taken from *Kirk* by *UB Services* was actually given in the context of simple misconduct. That is, the decision in *Kirk* was concerned with a definition for misconduct generally, not gross misconduct. The definition quoted by *Kirk* was taken from a jurisdiction, Michigan, that did not make a distinction between misconduct and gross misconduct. The decision in *UB Services* realized that the language quoted in *Kirk* actually rose to the level of gross misconduct and therefore correctly characterized the definition as that of gross misconduct.

cense, constituted "willful and wanton disregard of [the] employer's interests as is found in deliberate violations . . . of standards . . . which the employer has the right to expect of his employee." The majority could not have reached its desired result in the instant case had it allowed the *UB Services* opinion to stand.

In view of the foregoing, I dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion.

STARCHER, C.J., concurring.

(Filed Dec. 12, 2003)

I write separately to challenge the allegations made by my dissenting colleagues in their separate opinion.

To begin, my dissenting colleagues incorrectly assert that the "dispositive issue raised in this case by Gary Dailey was that he was fired because of union activities." They go on to accuse the majority of being "disingenuous[ ]," transforming a "meritless *fallback* argument into the dispositive issue in the case" and "summarily dispos[ing] of the true basis for the appeal" in a footnote. *See* 214 W.Va. at 429 n.1, 589 S.E.2d at 807 n. 1 (Davis, J., dissenting).

A quick view of Mr. Dailey's appeal brief reveals that my dissenting colleagues apparently failed to read Mr. Dailey's appeal brief before making their assertions. The appellant's sole assignment of error is that the record "is void of any misconduct, gross or otherwise, which would disqualify [Mr. Dailey] for unemployment benefits." The argument that follows this assignment of error focuses entirely on the question of the definition of misconduct, and the degree of misconduct that is required to deny a claimant unemployment benefits. Only in the opening statement of facts does Mr. Dailey discuss union activity, and only in the statement of facts does he allude that this was his employer's true motivation for his firing; the remainder of the brief discusses his lack of misconduct, and his contention that the Board of Review erred as a matter of law in denying him benefits on the basis of misconduct.

My dissenting colleagues apparently also failed to examine the facts of the Court's earlier case in this area, *UB Services, Inc. v. Gatson*, 207 W.Va. 365, 532 S.E.2d 365 (2000). As the author of that opinion, I can in retrospect absolutely state that the case is a classic example of bad facts making bad law—an error that the majority opinion corrects. In *UB Services*, the Court was faced with an employee who, after hours and off the company's premises (in his own home), confronted a co-worker with whom he had had a long-term romantic relationship. The employee savagely beat the co-worker, breaking her pelvis and hip, hospitalizing her for five days and causing her to miss work for six months.

In these circumstances, no employer in their right mind would allow the employee to return to the workplace—hence he was fired. The question existed as to whether the employee's conduct—after hours and off the premises—could be considered "gross misconduct" in the course of employment so as to completely deny the employee unemployment benefits. This Court examined the law in light of these horrific facts, and unanimously stretched the definition of "or any other gross misconduct" to include that of the off-duty, off-premises fired employee, thereby denying unemployment benefits. Extreme facts resulted in an extreme rule of law.

The majority opinion in the instant case corrects the extreme nature of the Court's opinion in *UB Services*, and for the first time gives the Board of Review and courts detailed guidance as to the meaning of "misconduct" and "gross misconduct." As the author of *UB Services*, I am therefore offended by my dissenting colleagues' position that the decision to overrule the case is "reprehensible." The majority opinion, in superb detail, sets forth the definitions of the two terms used by other states, and uses the law of those other states to craft definitions for use in West Virginia. Because of the expansive nature of the definition of "gross misconduct" in *UB Services*, overruling the case was the only way to properly refine and discuss our law in this area.

I concur with the majority's well-researched, well-reasoned opinion, and am disappointed by the wholly-unnecessary vitriol of my dissenting colleagues in attacking that research and reasoning. My dissenting colleagues are clearly disappointed with the *result* of the case, but "sound-bites" chastising the majority for not adopting arguments that weren't even asserted by the parties, or accusing a party of engaging in criminal conduct, are simply inappropriate.