IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 23, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**ELIZABETH PAUGH,**
**Claimant Below, Petitioner**

**v.) No. 24-ICA-56** (Case No. R-2023-2328)

**MOUNTAINHEART COMMUNITY**
**Employer Below, Respondent**

**and**

**SCOTT A. ADKINS, in his capacity as**
**Acting Commissioner of**
**WORKFORCE WEST VIRGINIA, and**
**WORKFORCE WEST VIRGINIA**
**BOARD OF REVIEW,**
**Respondent**

## MEMORANDUM DECISION

Petitioner Elizabeth Paugh appeals WorkForce West Virginia Board of Review's January 10, 2024, Decision which reversed the Administrative Law Judge's ("ALJ") decision and held that Ms. Paugh was discharged for gross misconduct. Respondents Scott A. Adkins, in his capacity as Acting Commissioner of WorkForce West Virginia ("WorkForce"), and the WorkForce West Virginia Board of Review ("BOR") timely filed a joint summary response in support of the Decision.[1] Respondent MountainHeart Community ("MountainHeart") also filed a response in support of the Decision. Ms. Paugh filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the circuit court's decision but no substantial question of law. For the reasons set forth below, a memorandum decision vacating the BOR's order and remanding for further proceedings consistent with this decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Ms. Paugh is represented by Amanda K. Gavin, Esq. WorkForce and the BOR are represented by Kimberly A. Levy, Esq. MountainHeart Community is represented by Richard W. Walters, Esq.

Ms. Paugh worked as a Case Manager for MountainHeart from September 23, 2019, until September 13, 2023. MountainHeart is located in Oceana, West Virginia, and is a childcare resource and referral center.

By deputy's decision mailed October 6, 2023, Ms. Paugh was discharged on September 13, 2023, when she was accused of failing to prevent known illegal activity that involved her husband coming to MountainHeart and allegedly supplying marijuana to a co-worker of Ms. Paugh, which is a violation of company policy. The claims deputy concluded that MountainHeart failed to substantiate the allegations and therefore Ms. Paugh was not disqualified from receiving benefits.

By letter received by the BOR on October 19, 2023, MountainHeart sought to appeal the deputy's decision. MountainHeart noted that Ms. Paugh's husband came to meet another employee to distribute marijuana and Ms. Paugh was aware of the transaction. MountainHeart attached statements to the letter from Ms. Paugh's co-workers. The first statement is from Ms. Paugh's supervisor, and it details the conversation that occurred on September 13, 2023, between Ms. Paugh and the supervisor once the supervisor confronted Ms. Paugh about the allegation that her husband supplied marijuana to a co-worker while Ms. Paugh was present. The statement notes that Ms. Paugh stated she knew about the allegation, but she did not know whether or not it actually occurred. The statement notes that Ms. Paugh was terminated immediately following the conversation with her supervisor.

The second statement is an email from Peggy Lyles. The email states that an employee named Morgan told Ms. Lyles that she was waiting on Ms. Paugh's husband to bring her marijuana to help her deal with pain from an upcoming operation. The email states that later that day Ms. Paugh's husband showed up and went into Morgan's office with Morgan and Ms. Paugh. As Ms. Paugh's husband walked by Ms. Lyles, she states that she smelt an odor that she believed was marijuana. The third statement is from Tina Nicholson. It states that Morgan came into her office and stated that she ordered marijuana from Ms. Paugh's husband. The statement goes on to state that later that afternoon, Ms. Nicholson was at the front desk when Ms. Paugh's husband came into the office smelling strongly of marijuana.

On November 13, 2023, a hearing was held before the ALJ. The human resources director for MountainHeart appeared on behalf of the employer. Ms. Paugh did not appear. The ALJ noted that notice was sent to Ms. Paugh's address, but he did not have any telephone information for Ms. Paugh. The human resources director testified that Ms. Paugh was terminated because Mountain Heart received documentation from two employees that indicated that Ms. Paugh's husband was coming to the office to bring marijuana to another employee and that when Ms. Paugh's husband arrived, Ms. Paugh, her husband, and the other employee went into the same office. The ALJ asked the human resources director whether or not she witnessed the transaction to which she responded in

2

the negative and noted that no other employee actually saw the alleged transaction. The ALJ admitted into evidence all three of the employee statements outlined above.

On November 13, 2023, the ALJ issued its written decision. The ALJ found that the hearsay evidence showed that Ms. Paugh's husband smelled like marijuana and was present at the office. No one saw any alleged transaction. Therefore, the employer's evidence was not reliable in a way that would cause a prudent person to accept it as more likely than not. Accordingly, the ALJ affirmed the decision of the claims deputy.

MountainHeart appealed the ALJ's decision to the BOR. On January 10, 2024, the BOR issued its Decision in which the BOR noted that although no one actually observed the transaction, the reasonable inference to be drawn from the co-worker statements is that Ms. Paugh was involved in the illegal transaction. The BOR then cursorily concluded that Ms. Paugh's conduct satisfies the "any other gross misconduct" requirement of West Virginia Code § 21A-6-3 (2020). The BOR reversed the ALJ and held that Ms. Paugh is disqualified until she returns to covered employment for at least thirty days. It is from this Decision that Ms. Paugh appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

As mentioned previously, the BOR cursorily concluded that Ms. Paugh's conduct satisfies the "any other gross misconduct" requirement of § 21A-6-3. We start by noting that "[d]isqualifying provisions of the Unemployment Compensation Law are to be narrowly construed." Syl. Pt. 1, *Peery v. Rutledge,* 177 W. Va. 548, 355 S.E.2d 41 (1987). For purposes of determining the level of disqualification for unemployment compensation benefits, "gross misconduct is typically defined as a more egregious form of simple

3

misconduct." *Dailey v. Bd. of Rev., W. Va. Bureau of Emp. Programs*, 214 W. Va. 419, 426, 589 S.E.2d 797, 804 (2003).

In Syllabus Point 4 of *Dailey*, in part, the Supreme Court of Appeals of West Virginia stated:

> [A]n act of misconduct shall be considered gross misconduct where the underlying misconduct consists of (1) willful destruction of the employer's property; (2) assault upon the employer or another employee in certain circumstances; (3) certain instances of use of alcohol or controlled substances as delineated in West Virginia Code § 21A-6-3; (4) arson, theft, larceny, fraud, or embezzlement in connection with employment; or (5) any other gross misconduct which shall include but not be limited to instances where the employee has received prior written notice that his continued acts of misconduct may result in termination of employment.

When an employer, such as MountainHeart, relies upon the "other gross misconduct" provision based upon evidence other than prior written warnings, it has been held:

> Where the catch-all provision of "other gross misconduct" in West Virginia Code § 21A-6-3(2) is utilized as a basis for denial of all unemployment compensation benefits in the absence of a qualifying prior written warning, the employer is required to furnish evidence that the act in question rises to a level of seriousness equal to or exceeding that of the other specifically enumerated items, and a resolution of matters brought under this subdivision must be analyzed on a case-by-case basis.

*Id.* at Syl. Pt. 6. The "placement of a particular act in the category of gross misconduct should be carefully reviewed and should not be undertaken unless it is clear that such acts constitute gross misconduct as defined by the legislature." *Id.* at 427, 589 S.E.2d at 805.

Here, given the BOR's lack of analysis regarding how Ms. Paugh's conduct constitutes simple misconduct, much less gross misconduct that rises to a level of seriousness equal to or exceeding that of the other specifically enumerated items contained in West Virginia Code § 21A-6-3, we cannot carefully review placement of Ms. Paugh's actions in the category of gross misconduct. Accordingly, this matter is remanded to the BOR for such further proceedings as it deems necessary and to enter an order with sufficient findings of fact and conclusions of law to facilitate a meaningful review of what category of misconduct, if any, Ms. Paugh's conduct falls into.

4

Accordingly, the BOR's January 10, 2024, Decision is vacated, and this matter is remanded for further proceedings consistent with this decision.

Vacated and Remanded.

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear