IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**June 11, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**JANA BROOKE O'DELL**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-426**   (Cir. Ct. Kanawha Cnty. Case No. CC-20-2022-AA-28)

**SCOTT A. ADKINS, in his capacity as**
**Acting Commissioner of WorkForce West Virginia,**
**Respondent Below, Respondent**

**and**

**WORKFORCE WEST VIRGINIA**
**BOARD OF REVIEW,**[1]
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Jana Brooke O'Dell appeals the Kanawha County Circuit Court's September 27, 2024, order, which affirmed the decision of WorkForce West Virginia Board of Review ("BOR") and held that Ms. O'Dell was not eligible to receive Pandemic Unemployment Assistance ("PUA") because she was not prevented from working directly as a result of the COVID-19 pandemic. Respondent Scott Adkins, Acting Commissioner of WorkForce West Virginia ("WorkForce"), filed a response.[2] Ms. O'Dell filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order but remanding for further consideration is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] At the time Ms. O'Dell filed her appeal to circuit court, West Virginia Code § 21A-7-20 (1936) was in effect, which required the Board of Review to "be made a party to every judicial action which involves its decisions." However, § 21A-7-20 was repealed effective March 1, 2024.

[2] Ms. O'Dell is represented by Elizabeth Wehner, Esq. WorkForce is represented by Kimberly A. Levy, Esq.

1

Ms. O'Dell filed a claim seeking PUA benefits on April 24, 2020, as a result of allegedly becoming unemployed as a direct result of the COVID-19 pandemic when she was unable to perform work for a company named Poll Makers, as a self-employed individual, based upon being required to provide childcare for her special needs child whose school closed due to the COVID-19 pandemic.

In 2019, Ms. O'Dell worked from home for a company that provided medical services. She eventually quit this employment because her work hours were reduced to two to three hours per week. As a result, Ms. O'Dell began to pursue employment with Poll Makers which conducted political surveys.

On April 23, 2020, the CEO of Poll Makers submitted a letter that states that Ms. O'Dell had completed training for Poll Makers' work from home contract labor position but had not yet logged in and worked for the company, though she was qualified.

The Family Nurse Practitioner that treats Ms. O'Dell's daughter, who was six years old at the time, submitted a letter on behalf of Ms. O'Dell. The letter states that Ms. O'Dell's daughter suffers from a language disorder, speech delays, oppositional defiant disorder, sensory integration disorder, obsessive compulsive disorder, anxiety, and global developmental delays. The letter states that the child was unable to attend school due to COVID-19 and was further unable to attend daycare due to her diagnoses. The letter notes that it is the author's medical opinion that from March 2020 through the time of writing, the child required full-time supervision by an adult caregiver in the home with a knowledge and understanding of her disabilities and training/experience in managing her symptoms.

On February 3, 2021, the claims deputy determined that Ms. O'Dell was ineligible for PUA benefits because she did not have a defined start date for her employment with Poll Makers. The decision noted that it resulted in an overpayment, though no amount is mentioned. Ms. O'Dell appealed the deputy's decision.

On May 11, 2021, the Administrative Law Judge ("ALJ") held a hearing on Ms. O'Dell's appeal of the deputy's decision. Only two witnesses gave testimony: Ms. O'Dell and WorkForce's Employment Programs Associate, Alexander Naylor. Mr. Naylor testified that based on his research, the type of work Ms. O'Dell attempted to do for Poll Makers was not the type of work that one could rely on as their primary source of income. Mr. Naylor went on to testify that he contacted the CEO of Poll Makers, Amber Valdez, who informed him that working full-time for Poll Makers was not worth a person's time. Mr. Naylor also testified that competition for Poll Makers' assignments were "like trying to obtain popular concert tickets via Ticketmaster." He went on to state that Ms. O'Dell spent two to three hours a day for a week trying to get assignments from Poll Makers and then gave up.

Ms. O'Dell testified that her daughter received occupational and speech therapy at school and did well there until schools were closed. Once schools closed, it was impossible for her to work while the child was home due to her needs. She testified that in order to begin employment at Poll Makers, she had to complete training and enrollment, which she did. Once she completed those steps, she was sent an email with a link to an Excel document that she had to watch for potential assignments to be posted. She testified that she finished her classes and was certified to start polling on March 13, 2020, at which point she received a direct deposit onboarding form from Poll Makers as well as a W-9. She testified that she planned to start attempting work on March 16, 2020, but over the weekend she received a call from Kanawha County Schools regarding the schools closing due to the COVID-19 pandemic. She went on to testify that when she attempted to work, she would open the Excel document but as soon as the assignments would appear, they would be filled because so many people were calling to fill them. She testified that she attempted to obtain work for about a week before giving up.

Following the hearing, by decision mailed May 13, 2021, the ALJ found that Ms. O'Dell's

> ability to monitor her computer in order to attempt to obtain work assignments was limited, to some degree, as a result of providing care to her significantly challenged child, however, the nature to the work which the claimant was performing was such that her inability to obtain work assignments would have been significantly limited regardless of whether the claimant was required to provide care for her child who was unable to attend school as a result of the COVID-19 pandemic.

The ALJ went on to specifically find that Ms. O'Dell "is not a covered individual under the CARES Act because she did not become unemployed directly as a result of being required to provide care for a child who is unable to attend school as a result of the COVID-19 pandemic." The ALJ also stated that any payments to Ms. O'Dell were overpayments, though no amount was specified.

Ms. O'Dell appealed the ALJ's decision to the BOR who, on May 23, 2022, mailed its decision adopting the factual findings of the ALJ and affirming the ALJ's decision. Ms. O'Dell then appealed the BOR's decision to the circuit court. By order entered September 27, 2024, the circuit court affirmed the BOR and held that the BOR did not err in concluding that Ms. O'Dell did not have a defined start date and Ms. O'Dell was not able to work due to the nature of the work of Poll Makers, not due to COVID-19. It is from the is order that Ms. O'Dell appeals.

Our standard of review in this matter is as follows:

3

"On appeal, [an appellate court] reviews the decisions of the circuit court under the same standard of judicial review that the lower court was required to apply to the decision of the administrative agency." *Webb v. W. Va. Bd. of Med.*, 212 W. Va. 149, 155, 569 S.E.2d 225, 231 (2002) (per curiam).

> The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is *de novo*.

*Taylor v. Workforce W. Va.*, 249 W. Va. 381, 386, 895 S.E.2d 236, 241 (Ct. App. 2023) (alteration in original) (quoting Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994)).

On appeal, Ms. O'Dell's assignments of error all concern a single issue: whether Ms. O'Dell was a "covered individual" pursuant to The CARES Act § 2102, 15 U.S.C. § 9021 such that she was eligible to receive PUA benefits. 15 U.S.C. § 9021(a)(3) provides for payment of PUA benefits to "covered individuals," who must self-certify that they were able and available to work, except that the individual was unemployed, partially unemployed, or unable to work due to COVID-19. An individual can also be a "covered individual" under the CARES Act if the individual was scheduled to begin work and does not have a job or was unable to reach a job as a direct result of COVID-19. *See id*.

The question then becomes whether Ms. O'Dell was unable to work because of the COVID-19 pandemic, or whether she was unable to work due to the nature of the work of Poll Makers and her own decision to abandon her pursuit of work. The record clearly establishes that the struggles Ms. O'Dell encountered in trying to obtain work from Poll Makers would have been present regardless of the COVID-19 pandemic. In addition, Ms. O'Dell's own testimony indicates that she abandoned her pursuit of work after a week due to the competitive nature of the work and her frustrations with the same. While the Court acknowledges that this is a close call, we are, as always, guided by our standard of review. Based on the foregoing, we cannot say that the finding of the ALJ, adopted by the Board, that Ms. O'Dell "did not become unemployed directly as a result of being required to provide care for a child who is unable to attend school as a result of the COVID-19 pandemic" is clearly wrong. Accordingly, the BOR did not err in concluding that Ms. O'Dell was not a covered individual for the purpose of PUA eligibility.

However, regarding the issue of the alleged overpayments, the Court first notes that the amount of overpayment is unclear from the record. Further, this Court notes that the BOR did not consider Governor Justice's Executive Order Nos. 4-20, which established certain PUA benefits due to the COVID-19 pandemic, and 11-21, which states in part:

4

The provisions of Chapter 21A, Article 10, Section 21 of the Code of West Virginia requiring the commissioner of WorkForce West Virginia to collect non-fraudulent unemployment overpayments shall be suspended, provided: (a) The overpayment was received without fault on the part of the claimant; and (b) Recoupment of the overpayment would be against equity and good conscience.

Regardless of Ms. O'Dell's initial eligibility for PUA benefits, based on the record, it does not appear that Executive Order 11-21 was considered as to whether Ms. O'Dell should be required to repay the PUA benefits.[3] Thus, we find that the BOR erred in failing to consider Governor Justice's Executive Orders.

Accordingly, we affirm that Ms. O'Dell was ineligible for benefits because she was not prevented from working due to the pandemic. However, we remand to the circuit court with instructions to remand this matter to the BOR for further consideration as to whether Governor Justice's Executive Orders preclude WorkForce from collecting the alleged overpayments of PUA benefits,[4] and to the extent necessary, further factual findings as to the sum of the PUA benefits that Ms. O'Dell actually received.

Affirmed and Remanded.

**ISSUED:** June 11, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear

---

[3] We have remanded similar matters involving overpayments for consideration of Executive Order 11-21. *See Huffman v. Workforce W. Va.,* No. 23-ICA-111, 2024 WL 1270513, at *3 (W. Va. Ct. App. Mar. 25, 2024) (memorandum decision); *Workforce W. Va. v. Jonese*, No. 22-ICA-131, 2023 WL 5695915, at *4 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision); *Workforce W. Va. v. Kirker*, No. 22-ICA-125, 2023 WL 5696097, at *4 (W. Va. Ct. App. Sept. 5, 2023) (memorandum decision); *Fields v. Charleston Area Med. Ctr.*, No. 22-ICA-266, 2023 WL 6290652, at *3 (W. Va. Ct. App. Sept. 26, 2023) (memorandum decision).

[4] The Court notes that there is nothing in the record to indicate the presence of fraud in Ms. O'Dell's application for PUA benefits.

**CONCURRING, IN PART, AND DISSENTING, IN PART**:

Judge S. Ryan White


WHITE, J., concurring, in part, and dissenting, in part:

I concur with the majority's decision to remand this matter for further consideration on the issue of the alleged overpayments. As my colleagues noted, not only is the amount of the alleged overpayment unclear but also the BOR failed to consider Governor Justice's executive orders regarding the overpayment of Pandemic Unemployment Assistance (PUA) benefits in rendering its decision. Governor Justice made it abundantly clear in Executive Order 11-21 that "WorkForce West Virginia shall not recover or attempt to recover unemployment benefits that were incorrectly but non-fraudulently distributed to claimants, if such unemployment benefits were directly funded by moneys received by the state of West Virginia . . . under . . . The federal Coronavirus Aid, Relief, and Economic Security Act (CARES Act) . . . ." Additionally, by that same executive order, Governor Justice also suspended WorkForce West Virginia's statutory requirement to collect non-fraudulent overpayments when the overpayment was no fault of the claimant and "[r]ecoupment of the overpayment would be against equity and good conscience." Without question, fraud is not an issue in this appeal.

However, I respectfully dissent from the majority's decision to affirm the circuit court's order finding Ms. O'Dell ineligible for PUA benefits. The CARES Act and its PUA provisions are remedial statutes, enacted directly in response to the COVID-19 pandemic. In West Virginia, our Legislature has instructed us that the purpose of unemployment compensation is "to provide reasonable and effective means for the promotion of social and economic security by reducing as far as practicable the hazards of unemployment." W. Va. Code § 21A-1-1 (1978). Further, the Supreme Court of Appeals of West Virginia ("SCAWV") has long recognized that "unemployment compensation statutes should be liberally construed in favor of the claimant[.]" *Davenport v. Gatson,* 192 W. Va. 117, 119, 451 S.E.2d 57, 59 (1994); *see also Ohio Valley Medical Center, Inc. v. Gatson,* 202 W. Va. 507, 510, 505 S.E.2d 426, 429 (1998) (per curiam); *Dailey v. Bd. of Rev., W. Va. Bureau of Emp't Programs,* 214 W. Va. 419, 422, 589 S.E.2d 797, 800 (2003).

Moreover, the SCAWV has instructed us time and again that "[u]nemployment compensation statutes, being remedial in nature, should be liberally construed to achieve the benign purposes intended to the full extent thereof." Syl. Pt. 6, *Davis v. Hix,* 140 W. Va. 398, 84 S.E.2d 404 (1954); Syl. Pt. 1, *Lee-Norse Co. v. Rutledge,* 170 W. Va. 162, 291 S.E.2d 477 (1982) ; Syl. Pt. 2, *Childress v. Muzzle,* 222 W. Va. 129, 663 S.E.2d 583 (2008). "[C]ompensation Acts, being highly remedial in character, though in derogation of the common law, should be liberally and broadly construed to effect their beneficent purpose." *Sole v. Kindelberger,* 91 W. Va. 603, 114 S.E. 151, 153 (1922).

Here, Ms. O'Dell obtained contract employment as a pollster for Poll Makers in early 2020, a job that Ms. O'Dell could perform from her home using an online platform. However, Ms. O'Dell was considered self-employed, not a Poll Makers employee. After completing the requisite training and enrollment, Ms. O'Dell received an "on-boarding" payment from Poll Makers, and she was set to begin work for the company. However, Ms. O'Dell had to compete with others like herself to get work assignments from Poll Makers. To successfully do so, they had to closely monitor the company's online listing of work assignments, and as new ones appeared, take immediate action to accept them.

Right after Ms. O'Dell began her work with Poll Makers, the COVID-19 pandemic began in March 2020. West Virginia, like all other states, closed all schools to in-person learning to attempt to prevent the spread of the virus. Ms. O'Dell is the mother of a profoundly disabled child, who was then six years old. Until the school closures, Ms. O'Dell's child attended school daily, receiving academic instruction as well as occupational and speech therapies. Like millions of other parents, the closure of her child's school thrust Ms. O'Dell into the role of teacher, in addition to her roles as mother, caretaker, and breadwinner. However, Ms. O'Dell's child has needs unlike most other children because of the disabilities, such as the need for constant care and supervision. Understandably, given her child's needs, monitoring Poll Makers' work assignment list and competing for work was more than challenging, and Ms. O'Dell was unable to secure work assignments. This led Ms. O'Dell to apply for and receive PUA from 2020 to 2021.

Later, however, WorkForce West Virginia concluded that Ms. O'Dell had not been eligible to receive those benefits, finding that she was not a "covered individual under the CARES Act because she did not become unemployed directly as a result of being required to provide care for a child who was unable to attend school as a result of the COVID-19 pandemic." Both the BOR and the circuit court upheld this ineligibility determination, reasoning that given the stiff competition for the work assignments, Ms. O'Dell would have had the same problems securing them even if there had been no pandemic. In other words, they found that Ms. O'Dell would not have been successful in her efforts to compete for the work assignments even if she had not been caring for her profoundly disabled child, who required constant care and supervision, and who, but for the pandemic, would have been in school when Ms. O'Dell would have been competing for the work assignments.

Congress specifically designed the CARES Act and its PUA provisions to help people just like Ms. O'Dell. In March 2020, during the early days of the pandemic, the federal government enacted this law, expanding unemployment benefit eligibility to the self-employed and others not traditionally eligible for these benefits, directly in response to the catastrophic events that were unfolding with each passing day. Those extraordinary times required such extraordinary measures to keep people, like Ms. O'Dell and her child, housed, fed, and safe, as well as to prevent, or at least slow, the spread of the virus. Thus, the CARES Act is clearly a remedial statute. Accordingly, West Virginia law requires this Court (as well as the circuit court and the BOR) to liberally and broadly construe its provisions to achieve its purposes—to provide economic relief to those in need as a result

7

of the pandemic—and to construe the PUA statutes in Ms. O'Dell's favor. Here, contrary to the well-settled law of West Virginia, the circuit court and the BOR strictly construed these statutes against Ms. O'Dell. Worse, WorkForce West Virginia thereafter deemed Ms. O'Dell overpaid and sought repayment.

For these reasons, I respectfully concur, in part, and dissent, in part.